IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND          DIVISION
*(Select the Division in which the complaint is filed.)*

---

CYRUS ANDREW SULLIVAN

_____

_____

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-against-**

SCOTT ALLEN BREITENSTEIN

_____

_____

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for a Civil Case**

Case No. 16 CV 1743 - AC
*(to be filled in by the Clerk's Office)*

Jury Trial:    ● Yes    ○ No
*(check one)*

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Cyrus Andrew Sullivan |
| Street Address | P.O. Box 86653 |
| City and County | Portland, Multnomah |
| State and Zip Code | Oregon, 97286 |
| Telephone Number | 503-232-3080 |
| E-mail Address | N/A |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | SCOTT ALLEN BREITENSTEIN |
| Job or Title (if known) | Owner |
| Street Address | 29 Bidleman St. |
| City and County | Dayton |
| State and Zip Code | Ohio, 45410 |
| Telephone Number | (937)660-7343 |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |

| State and Zip Code | _____ |
| Telephone Number | _____ |
| E-mail Address (if known) | _____ |

Defendant No. 3

| Name | _____ |
| Job or Title (if known) | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |
| E-mail Address (if known) | _____ |

Defendant No. 4

| Name | _____ |
| Job or Title (if known) | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |
| E-mail Address (if known) | _____ |

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

3

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question                    ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.      If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

15 U.S.C. 1125
_____

17 U.S.C. 501
_____

_____

**B.      If the Basis for Jurisdiction Is Diversity of Citizenship**

1.      The Plaintiff(s)

a.      If the plaintiff is an individual

The plaintiff, *(name)* Cyrus Andrew Sullivan , is a citizen of the State of *(name)* Oregon _____.

b.      If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.      The Defendant(s)

a.      If the defendant is an individual

The defendant, *(name)* Scott Allen Breitenstein , is a citizen of the State of *(name)* Ohio _____. *Or* is a citizen of *(foreign nation)* _____.

4

b. If the defendant is a corporation

The defendant, *(name)* _____, is
incorporated under the laws of the State of *(name)*
_____, and has its principal place of
business in the State of *(name)* _____. *Or* is
incorporated under the laws of *(foreign nation)*
_____, and has its principal place of
business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an
additional page providing the same information for each additional
defendant.)*

3. The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant
owes or the amount at stake—is more than $75,000, not counting interest
and costs of court, because *(explain)*:

Statutory damages alone could be as much as $6,900,000 or
more once I discover the true number of violations. The figure
includes $300,000 for trademark infringement alone.

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as
briefly as possible the facts showing that each plaintiff is entitled to the damages or other
relief sought. State how each defendant was involved and what each defendant did that
caused the plaintiff harm or violated the plaintiff's rights, including the dates and places
of that involvement or conduct. If more than one claim is asserted, number each claim
and write a short and plain statement of each claim in a separate paragraph. Attach
additional pages if needed.

Scott Allen Breitenstein stole my idea and my work with it. His STDRegistry.com,
STDRegistry.org, and STDCarriersDatabase.com are ripoffs of my original site
STDCarriers.com. Breitenstein uses identical and confusingly similar marks.
He also copied at least 43 articles I wrote for my site word for word and created
a derivative work of 1 image.

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

I am seeking 100% of Mr. Breitenstein's profits or maximum statutory damages

of $6,900,000, whichever is higher. I also request that Mr. Breitenstein be forced

to transfer the offending domain names to me, transfer all data collected using

my marks to me, and that he cease all infringing activities.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 3/31, 20 16.

Signature of Plaintiff

Printed Name of Plaintiff    Cyrus Andrew Sullivan

**B.** **For Attorneys**

Date of signing: _____ , 20____ .

| | |
|---|---|
| Signature of Attorney | _____ |
| Printed Name of Attorney | _____ |
| Bar Number | _____ |
| Name of Law Firm | _____ |
| Address | _____ |
| Telephone Number | _____ |
| E-mail Address | _____ |

Cyrus Sullivan
P.O. Box 86653
Portland, OR 97286

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

**CYRUS ANDREW SULLIVAN**

**v**

**SCOTT ALLEN BREITENSTEIN**             **COMPLAINT: TRADEMARK INFRINGEMENT**
                                          **AND COPYRIGHT INFRINGEMENT**

I the Plaintiff, Cyrus Andrew Sullivan, pro se, hereby submits this complaint against Scott

Allen Breitenstein of Dayton, Ohio for trademark infringement under Title 15, United States

Code, Section 1125 and copyright infringement under Title 17, United States Code, Section 501.

This complaint does not include all of the evidence in this case known to me at this time, but it

does contain far more than enough to prove that Mr. Breitenstein has engaged in multiple acts

of trademark and copyright infringement against me. I will do my best to conform my pleadings

with the rules of This Court, but if I do not remember "where no trained advocate is present —

and this situation generally arises...the court itself undertakes to assure the litigant that no

meritorious case be lost because of a lack of legal skill. Briefs are scanned with unjaundiced

eyes and technical compliance with the Rules of the Court is not stringently enforced. The

dominant theme is liberality." Hoffman v. United States, 244 F.2d 378 (9th Cir. 1957).

## JURISDICTION

This Court has jurisdiction under Title 28, United States Code, Section 1331 and Title 28, United States Code, Section 1332. Trademark infringement under 15 U.S.C. 1125 and copyright infringement under 17 U.S.C. 501 are both federal questions under 28 U.S.C. 1331. Mr. Breitenstein resides in Ohio and I reside in Oregon, so diversity of citizenship under 28 U.S.C. 1332(a)(1) applies.

## SUMMARY OF ARGUMENTS

Since 2008 I've operated an online business using several domain names including STDCarriers.com and STDReporting.com. Those sites and related accounts were used to form a branch of my business known as "STD Carriers Disease Control and Prevention Services." It was commonly known in the market as "STD Registry", "STD Carrier Database", and like terms. Mr. Breitenstein has recently launched several websites using domain names and content that are identical or confusingly similar to my marks. Those sites also include a large amount of original literary work that Mr. Breitenstein is using without my permission. I am entitled to relief.

## SUMMARY OF EVIDENCE

The evidence in this case includes 134 exhibits grouped together into 4 sections. I tried to organize most sections chronologically and succeeded for the most part, but not entirely. Each section has its own cover sheet with its section number, a brief description of its content, and a memorable quote from the section.

Section 1 includes domain history and registrant information linking the offending domains to Mr. Breitenstein. It includes excerpts of a DomainTools.com Domain Report, WhoIs records, screenshots, DNS trace results, and an article from Fusion.net about a documentary film in which Mr. Breitenstein admitted owning one of the offending domains.

Section 2 includes screenshots of infringing marks and articles from Mr. Breitenstein's websites. They include many literary works that are either identical or confusingly similar to copy that I originally wrote for my website.

Section 3 includes prints of original marks and articles from my website, promotional material, and related sites that link back to the original. It also includes news stories that clearly establish my original sites, STDCarriers.com, as the original STD Carrier Database. Those marks are still in use today on social media and goods featuring them can still be purchased.

Section 4 features news reports, legal documents, and personal correspondence proving that I intend to resume site operations in the near future. Section 4 exists as a pre-emptive rebuttal just in case Mr. Breitenstein attempts to present a trademark abandonment defense. Documents not previously filed with This Court are provided in full. Relevant parts of Documents already on file with This Court are provided with references to their E.C.F. numbers in case number 3:13-CR-00064-HZ for Mr. Breitenstein's convenience.

## FACTUAL BACKGROUND

In 2008 I launched a website called STDCarriers.com featuring the first STD Carrier Database. It allowed users to publish accusations that people have sexually transmitted

diseases (STDs). It received national media attention including a local story that CNN picked up during its first month. Coverage dating back to 2008 featuring me as the owner can still be found online (Exhibit 67).

In 2010 Mr. Breitenstein added a category called "STD Carriers" to the cheaters section of his ScamBoard.com website (Exhibit 13). I did not notice it until recently because it obviously never did well at competing with my brand on search engines. Had Mr. Breitenstein ended there I would not be suing him because I don't see how a reasonable consumer could mistake his STD Carriers category for my work. However, I would still prefer that he choose a different name for that category.

In the summer of 2010 I completed a media research project profiling 100 people charged with HIV exposure and transmission crimes. The study gained some media attention much to the disgust of one blogger (Exhibit 80).

On March 10, 2011 someone posted a complaint about a gay porn star named Mason Wyler on ScamBoard.com (Exhibit 18). I didn't notice it at the time, but the body of the complaint is an exact copy of the report I wrote on STD Carriers as part of an ongoing media research project on celebrities with STDs (Exhibit 75). Snippets of that work can still be found on Facebook (Exhibit 76).

In the fall of 2011 I began receiving complaints from a Portland woman named Amanda Machina Falke about a STD report. I tried to help her, but the author wouldn't verify his identity, so I couldn't honor his takedown request. To motivate him I published his vulgar emails that accused Multnomah County Deputy District Attorney Kevin Demer of having a sexual

relationship with Mrs. Falke and sarcastically titled the piece something like "Alleged STD Report Author Accuses DA of Corruption." I figured he would stop jerking me around to get rid of the article, but I was wrong. Court documents later proved that around this time Mr. Demer, Mrs. Falke, and ODOJ Chief Investigator Geoff Darling began conspiring to bring my sites down by any means available.

In February of 2012 I announced that STDCarriers.com had received a "super fabulous makeover" for "Valentine's Day" (Exhbit 70). That announcement led to a story by the Village Voice (Exhibit 71) and one by Gawker's women's issues site Jezebel referring to my site as "STD Registry" (Exhibit 72).

On March 9, 2012 I attended a taping for a segment of Anderson Cooper's daytime talk show Anderson because Mr. Cooper was doing a segment about STD Carriers. The next day Mrs. Falke called 911 and claimed that I was holding her hostage in my home with a gun and a brief standoff with police followed. In coming weeks Mrs. Falke started posting names of my family members online with their contact information and lies about me. She also started sending me the threatening emails described by The Oregonian (Exhibit 111).

In April 2012 I launched STDReporting.com and got a little bit of media attention after sarcastically dedicating it to Anderson Cooper (Exhibits 73 & 74). The site searched a mix of complaint sites and social networks for people admitting to having or accusing another of having a STD. Within a couple months it had more reports than STDCarriers.com and I could easily back up my claim that if Mr. Cooper wants to single people out for facilitating the posting of false accusations then Mark Zuckerberg should be one of those people.

On April 15, 2012 Andrew Reburry of HugeDomains.com registered STDRegistry.com (Exhibit 1 p. 14). Reburry's business model seems to be one of registering domain names that might be of use to established similarly named websites or their would be competitors before flipping them at a huge markup (Exhibit 10). Reburry kept the domain named parked for the next few years.

In early May 2012 I did an identical makeover promotion for IllegalAlienReport.com by announcing that it received a "patriotic makeover" for Cinco de Mayo. In response Congressman Joseph Crowley announced on MSNBC and Twitter that he would be writing the Justice Department with a request that I be investigated for any violations of federal law.

On June 4, 2012 I sent Mrs. Falke a threatening email after I discovered proof of her crimes against me. I was subsequently arrested on state charges filed by Mr. Demer and held on $1,000,000 bail due to a special court order Mr. Demer obtained that also banned me from the phone. My arrest was a top story on some news stations and a copy of the coverage can still be found on the website of one of Mr. Breitenstein's reputation management partners (Exhibit 95).

On or about June 15, 2012 a complaint was filed against me in This Court and a no bail U.S. Marshal hold was put on me.

In late June, 2012 STDCarriers.com went down due to non-payment to the hosting company. I have tried all I legally can to get the site back up since then.

Around January 2013 STDReporting.com went down due to a hard disk failure. There was nothing I could do about that.

On July 18, 2013 I was sentenced to 24 months in federal prison for making threatening communications in violation of Title 18, United States Code, Section 875(c). Judge Marco Hernandez also ordered that I serve a 36 month term of supervised release during which I would not be allowed to use a computer without prior written permission from a probation officer. Hernandez made it clear that the computer restrictions were meant to prevent me from gaining access to the tools I need to run my business and engage in other First Amendment protected activities. Despite the restrictions I vowed to run my websites until the day I die (Exhibit 111).

On July 29, 2013 I appealed the conditions of release to the Ninth Circuit Court of Appeals ("9th Circuit") as overly broad violations of the First Amendment that create a greater deprivation of liberty than is reasonably necessary for the purposes of supervised release. Some months later Bronson James filed a brief on my behalf (Exhibit 115).

On April 21, 2014 I was arrested on state charges of misdemeanor assault at a halfway house where I was serving the last 6 months of my sentence for violating 18 U.S.C. 875(c). I was subsequently sentenced to a consecutive 24 month by This Court for assaulting a federal employee in violation of Title 18, United States Code, Section 111(a)(b) in case number 3:14-CR-00190-HZ (Exhibit 117).

On August 26, 2014 someone registered STDRegistry.org (Exhibit 5). Breitenstein currently uses it as a link farm for STDRegistry.com.

In December 2014 the 9th Circuit denied my appeal, see United States v. Sullivan, 588 F.Appx 631 (9th Cir. 2014). The denial was largely procedural due to my waiver of appeal that prevented them from reviewing it for abuse of discretion and that conditions such as mine were legal in some cases.

On or about March 16, 2015 Mr. James petitioned the Supreme Court of the United States ("SCOTUS") for certiorari on my behalf. We hoped that SCOTUS would use my case to settle a circuit split my favor. That split resulted in conditions such as mine being legal in some parts of the country and illegal in others. The petition was denied on April 20, 2015.

On or about June 16, 2015 I filed a motion in This Court to vacate my conviction and sentence on the grounds of ineffective assistance of counsel under Title 28, United States Code, Section 2255.

On or about July 24, 2015 Mr. Breitenstein took STDRegistry.com live. The WhoIs record for that date (Exhibit 1 p. 11) is the first record in which the name servers are pointed to a server capable of hosting a live site instead of a parked domain. The previous record from June 9, 2015 (Exhibit 1 p. 13) still pointed to HugeDomains.com, so Mr. Breitenstein probably bought it for around $2,095 judging by the last parked screenshot (Exhibit 3).

On September 16, 2015 DomainTools.com recorded the first screenshot of a live site at STDRegistry.com (Exhibit 4). The screenshot shows the latest posts on the home page with a text box watermark that said "Search STD Carrier" and an on site link that said "Report STD Carrier."

On October 31, 2015 Mr. Breitenstein must not have been trick or treating because STDCarriersDatabase.com was registered (Exhibit 6). That site now displays the latest reports from STDRegistry.com just like STDRegistry.org and both look like the first screenshot of STDRegistry.com (Exhibit 4).

On January 6, 2016 This Court denied my 2255 and issued a Certificate of Appealability ("COA") so that the 9th Circuit can determine if my lawyer was ineffective for failing to inform me that the charging instrument was defective and recommending that I plead guilty to an information that failed to charge an offense (Exhibit 128[E.C.F. 92]). Several post judgment motions followed including Exhibits 129 and 130 were filed. Then I appealed.

On or about January 12, 2016 the Fusion Network aired a documentary in which a woman accused Mr. Breitenstein of being a "dangerous sexual predator" (Exhibit 11 p. 13). In the video Mr. Breitenstein admitted to owning STDRegistry.com (Exhibit 11 p. 14) and several sites I recognized from the Domain Report (Exhibit 1 p. 19-20) including ReportMyEx.com, Cheatersrus.com, and ScamFound.com (Exhibit 11 p. 4).

On April 20, 2016 DomainTools.com recorded a screenshot of the current STDRegistry.com home page containing what appears to be new infringing marks that I will discuss later (Exhibit 14).

On May 9, 2016 I was released from the United States Penitentiary in Victorville, California ("USP Victorville").

On May 12, 2016 the 9th Circuit struck down computer restrictions identical to mine in United States v. LaCoste, 811 F.3d 1187 (9th Cir. 2016). At the time of the decision I was not aware of it and did not become aware of it until much later.

On June 2, 2016 I met with my probation officer, Matthew Preuitt, and requested permission to resume site operations. He denied my request as well as requests to use computers to look for work, write a book, and do case law research for my appeal because I was still pro se at the time. Fortunately Mr. Preuitt did approve of other people typing legal documents for me.

On or about June 9, 2016 I filed a pro se motion to modify my conditions of release (Exhibit 131[E.C.F. 108]) and a second motion to appoint counsel. A few weeks later I met with Reuben Iniguez and Lisa Hay at the Federal Public Defender's office and was informed that Ms. Hay would represent me on appeal (9th Circuit ordered counsel be appointed on July 7, 2016, case number 16-35270) and Mr. Iniguez would represent me in This Court regarding my release conditions. I left the meeting relieved that I would not have to do any more pro se filings.

On July 25, 2016 Mr. Iniguez met with Assistant United States Attorney Jonathan Haub. Following the meeting I was informed that Mr. Haub had agreed that my release conditions could no longer survive judicial scrutiny due to LaCoste. Unfortunately Mr. Haub subsequently filed a motion of his own seeking new employment restrictions specifically tailored to prohibit me from running my websites (Exhibits 132[E.C.F. 114] and 133[E.C.F. 133]).

On July 27, 2016 I was speaking with Mr. Iniguez on the phone and he started doing Google searches for my brand hoping to find other people offering similar services because that

could help with my defense. He mentioned STDCarriersDatabase.com and my first thought was that someone probably started a gripe site about me, but then I heard about STDRegistry.com and was flattered to hear that someone had copied my work. Then I was told how it called itself "STD Carriers Registry" and I became more curious as my sense of flattery subsided. Eventually I was shown screenshots of the home page (Exhibit 14), removal policy (Exhibit 15), and terms of use (Exhibit 16). I immediately recognized that someone had copied my work with the exception of the inferior removal policy.

On or about August 7, 2016 I was shown screenshots of early reports from STDRegistry.com and recognized many as my original work created for my website. At that point I became angry because Mr. Breitenstein had obviously copied my work before I was even arrested and intended to compete with me using my own work whether or not I went to prison. Now when people search for my work they see this cheap imitator.

Today I am anxiously awaiting word on my appeal and my motion in This Court contesting release conditions. This Court took the issue under advisement on August 10, 2016 and because the proposed changes favor me a hearing is required.

**ARGUMENTS**

I have grouped my arguments by statue beginning with trademark infringement followed by dilution and tarnishment, domain squatting, copyright infringement, and proof that I intend to resume site operations.

## Trademark Infringement

15 U.S.C. 1125(a)(1) states "Any person who, on or in connection with any goods or services...uses in commerce any word, term, name, symbol, or device, or any combination there of, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which — (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person...shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such an act."

Starting with the STDRegistry.com home page (Exhibit 14) the name of the service "STD Registry Disease Control and Prevention Services" is an exact copy of the name of my website with the word "Carriers" from "STD Carriers Disease Control and Prevention Services" replaced with "Registry." Also stolen from my home page (Exhibit 62) is the description of the service. Mine reads as follows:

"STD Carriers was founded as and still is the first public early warning alert system for identifying potential sources of incurable sexually transmitted diseases (STDs). International STD Registry People Finder Search Engine is a database driven list of people with HIV/AIDS, Genital Herpes, HPV, Genital Warts, and Hepatitis C. Our automated content management system (CMS) utilizes the power of modern information technology to provide a real time information storage and distribution service that is fully operational 24 hours a day 7 days a week."

Mr. Breitenstein simply replaced "STD Carriers" with "STDRegistry" and "International STD Registry People Finder Search Engine" with "The International Sexually Transmitted Disease (STD) Registry" so that his description reads:

> "STDRegistry was founded as and still is the first public early warning alert system for identifying potential sources of incurable sexually transmitted diseases (STDs). The International Sexually Transmitted Disease (STD) Registry is a database driven list of people with HIV/AIDS, Genital Herpes, Genital Warts, and Hepatitis C. Our automated content management system (CMS) utilizes the power of modern information technology to provide a real time information storage and distribution service that is fully operational 24 hours a day 7 days a week."

I do not feel the need to waste This Court's time explaining just how similar that is. I will point out that as creator of the "first public early warning alert system" I feel that when Mr. Breitenstein claims to be "The Original and World's Largest STD Registry Database" he is essentially claiming to be me because I am the person originally credited by the media with creating the original (Exhibits 67, 71, 72, 73, 74). Now people find stories showing Mr. Breitenstein as the STD Registry guy (Exhibit 11), but he is not me. He is an imposter.

Mr. Breitenstein calls his STD Registry "STD Carriers Registry" using my unique domain name exactly and the "Report STD Carrier" navigation link sounds a lot like my "Report a STD Carrier" navigation link. The logo features a biohazard symbol on top of a shield kind of like mine (Exhibit 71), but not as good.

Finally, the Terms of Use ("TOU") (Exhibit 16) is an almost word for word copy of my TOU (Exhibit 64) except for the word "Registry" replacing the word "Carriers." He even includes my server's jurisdiction, The Kingdom of the Netherlands, even though his server is in Nevada (Exhibit 9). That can mislead consumers into thinking that his service is of the same origin as mine. Ironically, the only part of my TOU he did not copy is the part about how to send the website notices of copyright infringement (Exhibit 64 p. 2-3). I'll detail Mr. Breitenstein's colossal copyright infringement effort later. I'm mentioning it here as the icing on the similarity cake in this

case. A cake so similar that when I first tasted it I called my probation officer to make sure he

knew that I didn't bake it because if he found out the wrong way, I feared, he would arrest me for

violating the conditions of my release.


### Dilution by Blurring and Tarnishment


15 U.S.C. 1125(c)(1) states "Subject to the principles of equity, the owner of a famous

mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an

injunction against another person who, at any time after the owner's mark has become famous,

commences use of a mark or trade name in commerce that is likely to cause dilution by blurring

or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual

or likely confusion, of competition, or of actual economic injury."


My service was never a household name, but it did get a lot of publicity from news

organizations all over the country (Exhibits 67, 71, 72, 73, 74, 111). If it were not for such

publicity HugeDomains.com (Exhibit 10) probably wouldn't have considered STDRegistry.com

worth squatting on in the first place. My services were international and the goods available for

sale are as well (Exhibit 66).


15 U.S.C. 1125(c)(2)(B) defines "dilution by blurring" as "association arising from the

similarity between a famous mark or trade name and a famous mark that impairs the

distinctiveness of the famous mark. In determining whether a mark or trade name is likely to

cause dilution by blurring, the court may consider all relevant factors, including the following: (i)

The degree of similarity between the mark or trade name and the famous mark." Like I said

before the marks are so similar that I don't feel the need to waste This Court's time explaining

the similarities further. "(ii) The degree of inherent or acquired distinctiveness of the famous mark. (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark." The marks were one of I kind and I was the only person using them when I was arrested. "(iv) The degree of recognition of the famous mark." Celebrities recognized it. "(v) Whether the user of the mark or trade name intended to create an association with the famous mark." Obviously Mr. Breitenstein did. "(vi) Any actual association between the mark or trade name and the famous mark." Mr. Breitenstein didn't need to be associated with me to copy my work.

The entire time I was in prison I fantasized about turning my sites back on upon my release and sending out a press release titled "STD Registry Creator Out of Prison and Fighting Back." I can't do that now because people will wonder what site I am talking about, so if I do send a release like that I will have to replace "STD Registry" with "STDCarriers.com" because the domain name is the only distinguishing mark between the two sites.

15 U.S.C. 1125(c)(2)(B) defines "dilution by tarnishment" as "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." The inferior quality of services offered by Mr. Breitenstein and Mr. Breitenstein's reputation can only tarnish me.

Mr. Breitenstein's removal policy (Exhibit 15) is grossly inferior to mine (Exhibit 63). Mr. Breitenstein says that after taking up the issue of a false report with the submitter that the submitter must send a removal request, verify their identity, and wait "6 months to 12 months or more" for a review or pay a third party "mediation" service to remove the post. At least I had a P.O. box where people could send proof that a posting was not true and I would usually remove

it in 30 days or less. The only reasons for a policy like Mr. Breitenstein's, that I can think of, are to maximize reputation management sales and laziness due to Mr. Breitenstein not wanting to take a break from smoking. He also says that he will honor court orders that provide proof that a posting is false, but doesn't tell people how to at least send him a copy of the order. My policy was written so that people wouldn't even have to go to court to clear their names. I don't want people thinking that I am one responsible for creating a policy as awful as Mr. Breitenstein's.

The removal policy isn't the only thing awful about this imposter's registry. Remember the logo (Exhibit 14)? Now look at mine (Exhibits 65 & 71). Notice how mind is 3D with a lot of little details? That is because I designed it myself using a software program designed for creating 3D logos. I don't want people thinking that I designed Mr. Breitenstein's dimensionally inferior logo.

Then there are all the factual inaccuracies around the site. Like claiming to be an early warning system for "incurable" STDs while offering categories for curable STDs. Asking people to "Report STD Carrier" when it would read "Report a STD Carrier" or "Report STD Carriers" if proper English were used. Then its says "Submit a STD or HIV report" as if HIV were not a STD. Mr. Breitenstein also uses the phrase "our automated content management system (CMS)" when in fact the CMS is not his, it belongs to Wordpress. I on the other hand built my own CMS using ASP.Net.

Finally, most people that use the internet are stupid, so when they search for information about the owner of STDRegistry and scan through articles calling Mr. Breitenstein a sexual predator, they will not remember his name, but they will remember reading something about the owner of STDRegistry being a sexual predator. I don't consider Mr. Breitenstein a sexual

predator, but that doesn't matter to the peoples of the internets. This could be a huge problem for me, especially if I end up having to do any more prison time and get sent to a yard where nobody knows me. Any inmate that has read about Mr. Breitenstein or has seen the Fusion documentary could think that I'm a sexual predator and assault or even kill me. Even if I don't go back I won't be able to tell people about my work without wondering if they think that I'm a sexual predator.

## Domain Squatting

The universe is a big place where just about anything imaginable might be found, but despite its vastness nowhere in our universe could there exist the remote possibility of a justification for STDCarriersDatabase.com. Under 15 U.S.C. 1125(d)(1)(A) "A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person — (i) has a bad faith intent to profit off that mark, including a personal name which is protected as a mark under this section; and (ii) registers, traffics in, or uses a domain name that — (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark."

The same can be said of STDRegistry.com and STDRegistry.org both of which took the URL http://stdcarriers.com/registry/ before removing "carriers" and moving "registry" into the top level domain name. Links to my original STD registry with the URL intact can still be found online (Exhibit 70 p. 2). 15 U.S.C. 1125(d)(1)(B)(i) "In determining whether a person has a bad faith intent described under subparagraph (A) a court may consider factors such as, but not

limited to — (I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services...(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site...(VIII) the person's prior registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)."

I find 15 U.S.C. 1125(d)(1)(B)(i)(V), (VIII), and (IX) especially relevant to this case. STD Registry was a distinctive mark that I created and I was the only person known to be doing business under before Mr. Breitenstein came along. The Domain Report makes it obvious that Mr. Breitenstein has done this to other people (Exhibit 1 p. 19-20). For instance I included Exhibit 100 because I thought it was ironic that a complaint about one of Mr. Breitenstein's sites showed up in my discovery, but I have since realized that the site in my discovery is LiarsCheatersrus.com and Breitenstein owns LiarCheatersrus.com, a confusingly similar domain.

Bad faith can further be established by the massive amount of copyright infringement that Mr. Breitenstein has engaged in. It is the most copyright infringement I've seen since my college movie collection.

## Copyright Infringement

Mr. Breitenstein has engaged in at least 43 acts of copyright infringement in violation of my rights under 17 U.S.C. 106(1) for literary works and at least 1 act of image copyright infringement under 17 U.S.C. 106(2). Both statutes are referenced by the relevant part of 17 U.S.C. 501(a) "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122…is an infringer on the copyright or right of the author, as the case may be."

Of the 43 infringing articles I know of I can provide proof of authorship for 21 of them. I will be able to provide proof of the others once my sites are back up or I at least have the ability to access their backups.

The following matched pairs of exhibits are originally from my research about celebrities with STDs (Exhibit 75); Exhibits 18 & 76 (p. 1), 19 & 76 (p. 1), 31 & 77 (p.1), 61 & 76 (p. 3), and there is one profile on STDRegistry.com of Anne Heche that ripped off Exhibit 79 that has no permalink, so I have no screenshot of that one; The Facebook pages containing snippets of the original work (Exhibits 76, 77, 79) I created to increase the search engine visibility of my site.

The remaining matched pairs are mostly from a study I did on criminal HIV transmission (Exhibit 80); Exhibits 37 & 81, 38 & 81, 39 & 82, 40 & 83, 42 & 84, 43 & 85, 44 & 86, 45 & 87, 46

& 88, 47 & 89, 49 & 90, 50 & 91, 51 & 92, 52 & 93, and 53 & 94. Exhibit 20 is actually the first person I put on STDCarriers.com for which I included the futon story. Exhibit 25 matches the name of a man whose lawyer sent me a complaint in 2012 (Exhibit 78). From what I've seen it wouldn't surprise me if all or most of the remaining first 200 reports on STDRegistry.com not written by me were written by my users.

Section 19 of the STDRegistry.com TOU (Exhibit 16 p. 7-8) is a word for word copy of Section 20 of my TOU (Exhibit 64 p. 9-10). Exhibit 64 was originally filed with This Court as defense exhibit 1 in E.C.F. 51 from case number 3:13-CR-00064-HZ.

Finally, the image displayed on STDRegistry.com when no picture is submitted with a report (Exhibit 17) is an unauthorized derivative work under 15 U.S.C. 106(2). The original image was a 3D graphic that designed myself. Mr. Breitenstein has taken my graphic, deleted the word "Carriers", and replaced it with "Registry." This image constitutes a "work of visual art" and is protected by 15 U.S.C. 106A(a)(3)(A) which gives me the right "to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion."

Whenever any copied article or image is displayed to a user of Mr. Breitenstein's site 17 U.S.C. 106(5) applies. The total number of times an infringing article or image has been displayed to Mr. Breitenstein's visitors in unknown to me at this time.

## Intent to Resume Site Operations

The only possible argument that Mr. Breitenstein might try to present in defense of such blatant use of my marks would be abandonment of the marks. 15 U.S.C. 1115(2) allows as a defense to trademark infringement "that the mark has been abandoned by the registrant." 15 U.S.C. 1127 says that a mark is considered abandoned "when its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment." I can show that my marks are still in use, that special circumstances have temporarily prevented me from resuming site operations, and that I intend to resume site operations.

I have continued to provide informative services under the marks. As recently as October 1, 2015 the Twitter handle for STD Carriers @STDDatabase (Exhibit 65) was still Tweeting out links to the latest STD news. It only stopped for some unknown reason that broke the automated process that stayed running while I was in prison and I intend to fix that. My original posters (Exhibit 66 p. 2-3) and t-shirts (Exhibit 66 p. 4-5) are still available for sale at their PayPal URLs (Exhibit 66 p. 1). I also have several blogging accounts still active (Exhibits 68, 69, 82) and at least two of them (Exhibits 68 & 82) are still running third party advertising scripts that generate revenue. The "Lanham Act required 'complete discontinuance of use' for abandonment." Burgess v. Gilman, 475 F. Supp 2d 1051 (D.Nev. 2007) citing Electro Source v. Brandess-Kalt-Aetna-Group, Inc., 458 F.3d at 937-9.

If This Court determines that I have not been using the marks then special circumstances justify any nonuse and Mr. Breitenstein should be aware of those circumstances. Circumstances beyond the mark owner's control resulting in temporary nonuse is excusable;

"[a]bandonment does not result from a temporary forced withdrawal from the market due to causes such as war, prohibition, a labor strike, bankruptcy, import problems, unprofitable sales, being sued for patent infringement, or some other involuntary action." Burgess citing J. Thomas McCarty, 2 McCarty on Trademarks and Unfair Competition 17:16 n.1 (4th ed. 2006). In my case I went to jail (Exhibit 95), was prohibited from serving the market as a condition of release (Exhibit 111), experienced a mutiny by my own people kind of like a labor strike (Exhibit 123 p. 14-20), and picked up a new charge (Exhibit 117). In no case was any essential asset forfeited. Incarceration and supervised release are at most temporary circumstances in my case.

◦

My intent to resume site operations is overwhelmingly clear from the court records in my cases and additional evidence that I am submitting here. That evidence can be found in Section 4 of my Exhibits (Exhibits 96-134).

I have always been and am still fighting for my rights in This Court and the 9th Circuit. Exhibit 102 is part of an initial plea offer that I rejected because it would have required that I forfeit some of my online assets. Exhibit 108 shows that when I did plea, I did so under a circumstance that allowed my attorney the opportunity to oppose computer restrictions at sentencing. Those restrictions were objected to in a letter to the pre-sentence investigation report ("PSR") writer (Exhibit 109) and that objection was noted in the PSR (Exhibit 110). When my lawyer failed to object at the sentencing hearing (Exhibit 123 p. 3-6) I did so myself and The Oregonian reported on it in an article that made it clear that I will revive the website whether the judge likes it or not (Exhibit 111). I promptly appealed (Exhibit 115), picked up additional charges due to my refusal to comply with the restrictions (Exhibit 117), and petitioned SCOTUS when my appeal was dismissed (Exhibit 121). Following the SCOTUS denial (Exhibit 22) I promptly filed a motion to vacate due to ineffective assistance of counsel (Exhibit 123), when that was denied

(Exhibit 128) I filed several post-judgment motions where I clearly was trying to resume site operations (Exhibits 129[E.C.F. 93] and 130[E.C.F. 96], plus E.C.F. 94 and 98). I appealed again (E.C.F. 100 and 9th Cir. No. 16-35270), and once released from USP Victorville I filed a motion in This Court (Exhibit 131 E.C.F. 108) that was followed by motions by the government (Exhibits 132[E.C.F. 114] and 133[E.C.F. 115]) as well as my lawyer (Exhibit 134 E.C.F. 117). Being able to legally resume site operations as soon as possible is the primary reason behind all aforementioned pleadings. The case is still pending and if I lose I will appeal again.

Outside of court I tried to keep my sites up and have been trying to get them back up consistently over the years. I have also made repeated statements of my intentions to others.

Shortly after my arraignment I tried to circumvent my phone restriction through the mail (Exhibits 96 & 97). I fired a lawyer that refused to pass information for me (Exhibit 98). I drove a lawyer to quit after he defied me (Exhibit 123 p. 14-20) in an obvious attempt to reduce his workload (Exhibit 99). Throughout the years someone has been communicating with my hosting company, but has always stopped short of actually paying the bill and turning the sites back on (Exhibits 101, 103-5, 112-4, 116). Despite not being able to keep the sites up my defense team were able to keep their backups intact (Exhibit 99 p. 2). I had domain names renewed through a third party and through a third party's lawyer (Exhibit 107) even after Mr. Demer sent that person threatening emails (Exhibit 106). The entire point of renewing the domains was so that I can use them again. I constantly refused to follow my attorneys recommendations regarding the websites as well as a plea bargain that would have made me an internet stalker. I say "would have made me" because I am not guilty of internet stalking (Exhibit 123 p. 1-2). The basis of the charge (Exhibit 102 p. 3) was for content posted by users of my sites that allegedly caused emotional distress and offering to reduce their distress for a fee, so basically whenever

someone uses my site to inflict emotional distress on someone by posting false information and suddenly I'm a stalker. That is ridiculous, give me a break. What's next? Someone posts a naked picture on Mr. Breitenstein's site and all of a sudden he is a sexual predator?

I do not see how any self respecting person with any dignity could reward such things with their cooperation. I tried to issue press releases from USP Victorville (Exhibits 119-120) so that I could start fighting back online before I got out. I threatened to put an incompetent staff member one of my websites that allows complaints about health care, stated my intention to the disciplinary officer in defense of the threat, and informed the officer that she would be a priority subject for the police complaints section of NoLimitList.com (Exhibit 124). The priority subjects list is a small list derived from a large list that the government falsely labeled a "hit list" (Exhibit 117 p. 2) after violating my Sixth Amendment rights by reading my legal work in my assault case (Exhibit 124). The assault was in response to my probation officer refusing to grant me permission to run my business, work in my field, or use a computer in any practical way. When told to sign a contract agreeing to outrageous computer restrictions (Exhibit 118) or go back to prison, I slapped the person that issued the ultimatum. I continue to defend the attack as permitted under the Declaration of Independence, which states "all men…are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the pursuit of Happiness…whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or abolish it."The "hit list" is really a list of research subjects and the results of that research will be published at http://nolimitlist.com/rantrave/government/police where I was starting to expose the government's conduct in the days leading up to my arrest. Finally, after being assaulted by guards, I tried to get someone to honor an insurance policy that required the re-start of my sites if I were physically harmed in prison (Exhibit 126) and followed it with a very litigious notice (Exhibit 127). If I must provide further proof of intent I will.

The only thing that could be more massive than Mr. Breitenstein's infringements in this case would be proof of my intent to resume site operations. By no stretch of the imagination have I abandoned my marks.

## RELIEF SOUGHT

I am seeking the maximum amount of relief allowed by law. That includes monetary relief, domain name transfers, data transfers, and the cessation of infringing activities.

### Monetary Relief

Pursuant to 15 U.S.C. 1117(a) I am entitled "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of action" or "In a case involving a violation of Section 1125(d)(1)...not more than $100,000 per domain name" under 15 U.S.C. 1117(d), so I am requesting 100% of Mr. Breitenstein's profits or $300,000 (3 domain names), whichever is greater, for trademark infringement.

For copyright infringement 17 U.S.C. 504(a)(1) entitles me to "actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c)." 17 U.S.C. 504(b) requires only that I "present proof of the infringer's gross revenue" to determine profits, so I will subpoena Mr. Breitenstein's reputation management partners to come up with an estimate (Exhibit 15 p. 2). 17 U.S.C. 504(c)(1) permits statutory damages of no "more than $30,000" per act of infringement and 17 U.S.C. 504(c)(2) increases that amount to $150,000 for willful violators like Mr. Breitenstein and in his

case that would equal about $6,600,000. I reserve the right to increase this amount once I determine how many times my work has been displayed to web users.

The grand total I seek for all known trademark and copyright infringement at this is $6,900,000 ($6,600,000 for copyright infringement and $300,000 for trademark infringement) or 100% of Mr. Breitenstein's profits, whichever is higher.

## Domain Name Transfers

15 U.S.C. 1125(d)(1)(C) states "In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." I request that STDRegistry.com, STDRegistry.org, and STDCarriersDatabase.com be transferred to me.

## Data Transfer

Mr. Breitenstein has acquired a large amount of reputation management inventory using my marks and I would like to have that inventory for my reputation management services. Please order Mr. Breitenstein to turn over all data collected from users of STDRegistry.com including all STD reports. I consider all unsold inventory in his possession to be future profits that should be mine.

## Cessation of Infringing Activities

15 U.S.C. 1116(a) authorizes injunctive relief to prevent future infringement of trademarks and 17 U.S.C. 502 does the same to prevent future infringement of copyright. I plan to file subsequent motions for injunctions in accordance with local rules. At this time I request that Mr. Breitenstein cease infringing on my trademarks and copyrights.

## NOTICE OF INTENT TO AMEND OR SUPPLEMENT

Fed.R.Civ.P. 15 ("Rule 15") provides a number of options for amending or supplementing pleadings. I have no idea when my hearing will take place and until then I can't do my own web research to support my claims, so I will probably miss the 21 day deadline for filing amended pleadings as of right. If that happens I will ask This Court for leave to amend or supplement as Rule 15 allows. This advanced notice should minimize the prejudice, if any, suffered by Mr. Breitenstein as a result of my need to amend or supplement.

## Conclusion

Mr. Breitenstein has infringed on several trademarks of mine and mountain of copyrights. I am entitled to relief as the owner of the trademarks and copyrights. I demand a jury trial so that the full depths of Mr. Breitenstein's depravity can be explored.

I declare under penalty of perjury that the foregoing is true and correct. Executed on

8/31/2016

Cyrus Sullivan
Plaintiff
Pro Se