# SECTION 4

## Intent to Resume Site Operations

*"Cyrus scored on the 'superior' range on an intelligence test he was recently given...I knew he was smart, but not that smart."* - Kevin Demer



STDCarriers.com admin Cyrus Sullivan goes to jail | RemoveNames.com Online Reputation Management Services                    8/13/16, 12:46 PM

Removal Checkout        Why Us        Business        Personal        FAQ        Resources        Contact Us        Testimonials Page

 **RemoveNames**.com
*We make things DISAPPEAR*

EXHIBIT  95
PAGE  1  OF  1

Call us Now!
866-848-2022

| Search |

# STDCarriers.com admin Cyrus Sullivan goes to jail

*by Jake Remove Names on Jul 12, 2012 • Comments Closed • cyrus sullivan, cyrus sullivan arrested, illegalalienreport.com, stdcarriers.com*

Resources

## Cyrus Sullivan of STDCarriers.com goes to Jail

Guest Blogger -Jim Ransik

After allegedly contracting the herpes virus from a woman who he had sex with, Oregon native Cyrus Sullivan created a website which essentially, "outs," those who have Sexually Transmitted Diseases. Following along the same premise as the anonymous cheater reporting sites, bully sites and many more these STD sites are now popping up like wildfire. He also operates a website called IllegalAlienReport.com where you can anonymously report someone who you 'believe' may be or look like an illegal alien.

Cyrus Sullivan was arrested on June 8 2012. Below is some information we have gathered online about the case.
Cyrus Sullivan was in court Friday and charged with coercion, identity theft and felony computer crime.

Click here for Mugshot information.


Cyrus Sullivan of STDCarriers.com

Investigators say 28-year-old Cyrus Sullivan threatened to kill a person he believed was speaking out against him online.
Sullivan owns and operates a controversial website called stdcarriers.com.
The site allows people to report men or women they believe are carrying or possibly giving others STD's.
Sullivan has been criticized for posting information he can't verify.
Sullivan lives in southeast Portland.
Portland police arrested him Thursday night charging him with identity theft, coercion and computer crime.
According to court documents he told the victim to provide proof that the person wasn't the one speaking out against him online or he would mail what he would call that person's STD report.
Then investigators say he demanded 10,000 dollars.
When the person didn't pay, investigators say he threatened to kill that person.

## Find us on Facebook






Like Page

Be the first of your friends to like this

 RemoveNames.com
9 August at 18:38

Podcast Interview with our President & CEO Mr. Jake Lawson on EPN Podcast Network.

http://www.removenames.com/an-in-depth-look-into-reputatio.../



## Remove Names will Improve what people see when you Google you!

We REMOVE FALSE information, reputation attacks, and smear campaigns that are damaging your business, your name, and your career.

Located in Baltimore, Maryland, we combine experience and

EXHIBIT 96
PAGE 1 OF 1

Page 1

Dear ████████████████

After what that Judge pulled after being played by my Stalker ████ There is no reason to expect me to be released, so I need you to do me some favors, The first favor is to re-activate my server using the following steps,

1. Go to mouseenvironsilon/cP

2. use the following to login
Username: ██████████████
PW: ██████████████

• Make a payment for this month $105 if possible, (this months billing cycle is 6/18 - 7/18).

• Submit a support ticket and mark it as critical, In the ticket ask that the server be turned back on.
████████ if you have ████████████████
████ ██ ████████████████ I would rather
████████ make sure my sites stay up and worthless as she presented Kami White was never questioned the claims of my stalker/ argument and failed ████ on so many levels. Since she

EXHIBIT 97
PAGE 1 OF 1

Dear ████████

Your help in these
dark times has been
much appreciated. Once
you talk to ████ and
get the server back up
I need you to ████████
████████████████████
████████████████████
████████████████████
████████████████████
████████████████████
involving threatening communications.
Then I want you to
████████████████████
████████████████████
████████████████████
████████████████████
████████████████████
████████████████████

EXHIBIT 98

PAGE 1 OF 1     Kari White Complaint

20 Reasons To fire Kari
White, In Chronological order,

1. # Refused To transmit sensitive
data vital To business operations,

2. m failed To Schedule a release
hearing ASAP,

3. Justified her failure for reason 2
based on DDA Denver being out of
Town even though She knew he
had someone filling in for him.

4. failed To schedule a release
hearing by 6/18 when being
given that deadline over a
week in advance,

5. Dragged her feet with multiple
excuses for not scheduling a
hearing until 7/5,

6. Has never met with me
Personally before or since the hearing

7. She failed To review audio Tapes
before the hearing.

8. failed to rebut claims by the
Prosecution made at the hearing
as a result of the Tapes reviewed
in reason 7,

EXHIBIT 99
PAGE 1 OF 3

STEVEN T. WAX
  Federal Public Defender
STEPHEN R. SADY
  Chief Deputy Defender
Bryan E. Lessley ▲
Christopher J. Schatz
Ellen C. Pitcher
Craig Weinerman ▲
Mark Bennett Weintraub ▲
Gerald M. Needham
Thomas J. Hester
Ruben L. Iñiguez
Anthony D. Bornstein
Lisa Hay
Tonia L. Moro +
Susan Russell
Patrick Ehlers
Francesca Freccero

**FEDERAL PUBLIC DEFENDER**
**DISTRICT OF OREGON**

**101 SW Main Street, Suite 1700**
**Portland OR 97204**
**503-326-2123 / Fax 503-326-5524**

Branch Offices:

859 Willamette Street
Suite 200
Eugene, OR 97401
541-465-6937
Fax 541-465-6975

15 Newtown Street
Medford, OR 97501
541-776-3630
Fax 541-776-3624

C. Renée Manes
Amy Baggio
Nell Brown
Kristina Hellman
Harold DuCloux III
Alison M. Clark
Brian Butler+
Thomas E. Price
Michelle Sweet ★
Banu Ramachandran *

*In memoriam*
Nancy Bergeson
1951 - 2009

▲ Eugene Office
+ Medford Office
★ Research/Writing Attorney

August 24, 2012

Mr. Cyrus Andrew Sullivan
SWIS # 677564
Hand Delivered
LEGAL MAIL

LEGAL MAIL
ATTORNEY-CLIENT MATERIAL
OPEN IN PRESENCE OF
INMATE ONLY

Re:     *United States v. Cyrus Andrew Sullivan*, No. 3:12-mj-00098

Dear Mr. Sullivan,

This is a letter to help better explain the law as it could relate ███████

including ███████████          Any information you provide regarding ███

████████████ is confidential, as is information about ███████ This

remains the case unless or until: ████████████████████████████

████ ███████████████████████

████████ The latter would not be triggered unless ████████████

In no event would we be allowed to ████████████████

It is imperative that you refrain from ████████████████████

███████████████████████████████

███████████████████

August 24, 2012
Page 2

LEGAL MAIL
ATTORNEY-CLIENT MATERIAL
OPEN IN PRESENCE OF
INMATE ONLY

EXHIBIT 11
PAGE 2 OF 3



As your attorney, I cannot █████████████████████████████████████████

████████████████████ Confidentiality is a separate matter and has the limits previously

indicated.

If we attempt to █████████████████████████████████████████████



██████████████████ Having said that, it may not be possible to ████████████████████

██████████████████ Therefore, we only want to ████████████████

████████████████████████ It may be advisable not to ████████████

██████████████ l. Doing so may ████████████████████████████

████████████████████

I want to remind you again that all communications between us are still confidential.  The

issues discussed above will only come up if █████████████████████████████

█████████████████████████ I will consult with you further regarding your

preferences for what we do with ██████████████

Separately, our office has made every effort to ensure that the information associated with

your websites have been preserved intact.  The only reason that we continue to advise that the

LEGAL MAIL
ATTORNEY-CLIENT MATERIAL       EXHIBIT _99_
OPEN IN PRESENCE OF            PAGE _3_ OF _3_
INMATE ONLY

August 24, 2012
Page 3

websites not be made operational, or on-line, at this point is that the government will try to use that fact against you including advocating for your continued detention or as evidence of your continued motivation to harm the victim or others.

Finally, we continue to urge you to convey any requests regarding what to do with your websites through your attorney or investigators. Communications with others, including your mother are not confidential and can and will be used by the government against you. All of your statements are potential weapons that the government will use against you in unpredictable ways. If we wind up spending all our time defusing your statements, we will have a much more difficult time doing anything else.

We continue to believe that any communications with the press would be against your best interests. Taking advice from, or communicating about your case to fellow inmates is unwise and against attorney advice. Beyond the fact that other inmates have no legal training or duty to you, none of those communications are confidential. Any inmate is free to repeat anything you say to authorities in order to gain an advantage in their own case. If you are worried about anything regarding your case you should talk to me, William, or Jim about it before deciding to share information with a fellow inmate or take their advice.

Sincerely,

Thomas E. Price
Assistant Federal Public Defender

TEP:cm





Google p[redacted]ob[redacted]

Search

Page 3 of about 143,000 results (0.20 seconds)

Everything
Images
Maps
Videos
News
More

Sidney, BC
Change location

The web
Pages from Canada

More search tools

P[redacted] OB[redacted] McKnelly Profiles | Facebook
www.facebook.com/public/P[redacted]-OB[redacted]-McKnelly
View the profiles of people named P[redacted] OB[redacted] M[redacted] on Facebook. Join Facebook to connect with P[redacted] OB[redacted] M[redacted] and others you may know.

LookupAnyone.com - People Directory - P[redacted] Ob[redacted] — Rex ...
www.lookupanyone.com/ ../p[redacted]-ob[redacted]-rex-ob[redacted].html
Obanlon, P[redacted] — Ob[redacted], Rex. Ob[redacted], P[redacted] · Ob[redacted], Phil · Ob[redacted] Ralph · Ob[redacted], Reba · Ob[redacted] Rebecca · Ob[redacted], Renae · Ob[redacted], Rex ...

LookupAnyone.com - People Directory - P[redacted] Ob[redacted]
www.lookupanyone.com/namelistings/p[redacted]-ob[redacted].html
Name, Age, State. P[redacted] J Ob[redacted], 49, IL. P[redacted] S Ob[redacted], 68, IN. P[redacted] Ob[redacted], 46, IL. P[redacted] O[redacted] CA. FIND MORE PEOPLE. First Name. MI. Last Name ...

uneven chest development - Bodybuilding.com Forums
forum.bodybuilding.com › Main Forums › Exercises
14 posts · 11 authors
... Email this Page... Subscribe to this Thread... 12-13-2005, 10:27 AM #1 · pattyobanion · View Profile · View Forum Posts. p[redacted]ob[redacted] p[redacted]ob[redacted]'s Avatar ...

FAMILY HISTORY P[redacted] L. O'B[redacted]
freepages.genealogy.rootsweb.ancestry.com/~jcpluminer/../30032.ht...
4 Sep 2011 – P[redacted] L. O'B[redacted] born [redacted] - GENEALOGY, FAMILY HISTORY.

P[redacted] Ob[redacted] - San Marcos, CA | MyLife™
www.mylife.com/patty_obanion
Locate P[redacted] Ob[redacted] online with our advanced people search tool. Find all your old friends and colleagues at MyLife™.

✓ STD Reporting: Sexually Transmitted Disease Accusations ...
stdreporting.com/page/19/
13 May 2012 – Genital Herpes Outbreak Reported in P[redacted] OB[redacted] Published May 13, 2012 | By STDReporting. 'Has had "breakouts" as long as I've known ...

About TrueCare. A Social Media Monitoring Company
www.truecare.com/about-truecare
Frames Del Mar Owner M[redacted] L[redacted] Slandering P[redacted] O'B[redacted] · Marc Lanotte Making False Statements about P[redacted] O'B[redacted] · The Harbinger: Bullying ...

P[redacted] OB[redacted] | NetProspex - Business contact information ...
www.netprospex.com/.../P[redacted]-OB[redacted]53529654 · United States
Contact P[redacted] OB[redacted] Manager at Caseys General Stores Inc, part of Gas Stations, Convenience & Liquor Stores Industry in Ankeny, IA, as well as other ...

P[redacted] Ob[redacted] @ Reunion.com
www.reunion.com/p[redacted]ob[redacted]/ · United States
Find P[redacted] O[redacted] @ Reunion.com - Now part of Mylife.

‹ Gooooooooooogle ›
Previous 1 2 3 4 5 6 7 8 9 10 Next

Advanced search Search Help Give us feedback Go to Google.com

Google Home Advertising Programs Business Solutions Privacy & Terms About Google

EXHIBIT 2
PAGE 1 OF 1

CS000151

5/23/12 Patty O'Banion | LiarsCheatersRUs.com

- Home
- Report a Liar or a Cheater
- Forum
- Photos
- About
- Contact Us

POSTED BY M[redacted] L[redacted]

# LiarsCheatersRUs.com

Liars and Cheaters
Search [Search]

**P[redacted] O'B[redacted]**

This woman suckered me into moving into her broken down home and run it while she ran around screwing married men (with kids). It cost me thousands to repair all that was wrong with the house. I never got a penny because she was "unemployed". Meanwhile this tramp was having sex with her Captain, V[redacted] S[redacted] She is a stewardess on a yacht known as the ****. She also slept with a woman while supposedly being faithful to me. Then took me court and lied several times over and sued me for money. Check her listings, she is quite sue happy and her relationships end badly all the time. Also ask her about her "breakouts". Being a sl*t makes your nether regions all kinds of FUBAR.
Do to trust this woman and her easy going manner and niceness, it is all a ruse to look out for you to serve her own financial benefit.
Also, Alzheimer's runs her family, she will most likely have it in a few years and needs to find a man to take care her because she has no one to care for her when she's done with life. should also add she's a mean drunk and was a complete b*tch to my eight year old son, mostly because she doesn't know how to deal with male kids. ask her son. they had a terrible relationship, and he married someone as controlling as her. she always complained to me about their lack of a decent mother/son relationship. keep her away from your kid, and the booze....she drinks too much.

AdChoices ▷
Why Men Pull Away
10 Ugly Mistakes Women Make That Ruins Any Chances Of A Relationship

Is He Cheating On You?
1) Enter His E-Mail Address 2) See Hidden Pics & Social Profiles Now! AdChoices ▷

Like 8 0

This post was submitted by jim

Comment
Categories: California Liar Cheater Woman
Permalink

**Leave a Reply**

Your email address will not be published. Required fields are marked *

Name *
Email *
Website

3NBC

CAPTCHA Code *

I contacted these people – they would NOT Remove the post – thru the DNS owner.

Cheaterville.com is connected to this site.

They want to engage both parties in BATTLE Like Jerry Springer.

CS000152

EXHIBIT ___/o/___
PAGE ___/ OF /___

| | |
|---|---|
| **From:** | [@eurovps.com] |
| **Sent:** | Friday, October 26, 2012 5:34 AM |
| **To:** | |
| **Subject:** | [eurovps.com        Cyrus Sullivan |
| **Attachments:** | evwire.pdf; ar_doc_40116.pdf |

 

evwire.pdf (20 KB)  ar_doc_40116.pdf
(4 KB)

Hello,

Apologies in the delay to getting back to you, I have generated an invoice of 1275EUR for the renewal of your services for 6 Months, the system has sent the invoice to - as it was stated under your account.

I have also attached the invoice and our Bank Transfer information.

Please let me know if you require further information,

Senior Customer Advocate
EuroVPS Internet Services

1

Per C. Olson / *Cyrus Andrew Sullivan*
October 30, 2012
Page five of eight



EXHIBIT 102
PAGE 1 OF 3

A.  move to dismiss Case Number 12-06-32556 in the Circuit Court of the State of Oregon for Multnomah County in which defendant is charged with coercion, computer crime and identity theft;

B.  move to dismiss Case Number 10-03-43325 in the Circuit Court of the State of Oregon for Multnomah County in which defendant is charged with recklessly endangering another person, disorderly conduct and criminal mischief, if defendant agrees to pay $1,000 in restitution to the victim of that offense;

C.  not file computer crime charges against defendant arising from an incident in March 2011 where the night after defendant was terminated from a Portland-based Internet company, he accessed without authorization, or "hacked" into, several commercial websites owned by the Internet company and posted offensive material and sent threatening emails to persons associated with the Internet Company;

D.  not file witness tampering charges against defendant arising from a July 5, 2012 hearing in Case Number 12-06-32556 in the Circuit Court of the State of Oregon for Multnomah County during which defendant threatened to kill the victim of the offense and the judge presiding over the hearing.

11.  **Agreement to abandon interest in domain names/websites**:  Defendant agrees to abandon any interest he may have in the following domain names/websites and to have no communication with and to not facilitate any communication with such domain names/websites while under the jurisdiction of any federal court related to the instant case.  Defendant also agrees to allow the Federal Bureau of Investigation to succeed his interest in such domain names/websites.

A.  Parent Sites
  i.    http://sullivanbiztech.com
  ii.   http://stdcarriers.com
  iii.  http://cyberbullyingreport.com
  iv.   http://nolimitlist.com
  v.    http://stdmerchandise.com
  vi.   http://stdreporting.com
  vii.  http://illegalalienreport.com
  ████████████████████████
  ix.   http://daylabor.org
  x.    http://cyrussullivan.net
  xi.   http://bullyingnews.com
  xii.  http://brokeborderpatrol.com,

B.  Twitter Pages
  i.    http://twitter.com/stddatabase
  ii.   http://twitter.com/alienreports
  iii.  http://twitter.com/cyberbullyalert

Per C. Olson / *Cyrus Andrew Sullivan*
October 30, 2012
Page six of eight

EXHIBIT __102__
PAGE __2__ OF __3__

       iv.    http://twitter.com/nolimitlist
       v.    http://twitter.com/stdmerchandise
       vi.    http://twitter.com/cyrussullivan

C.    Facebook Pages:
       i.    https://www.facebook.com/pages/No-Limit-List/109439432458595
       ii.    https://www.facebook.com/pages/Illegal-Alien-Report/130339360330352
       iii.    https://www.facebook.com/pages/STD-Carriers-Disease-Control-and-Prevention-Services/168934559886090

D.    WordPress Pages:
       i.    http://cyberbullyingreport.wordpress.com
       ii.    http://illegalalienreport.wordpress.com
       iii.    http://nolimitlist.wordpress.com
       iv.    http://stdcarriers.wordpress.com
       v.    http://stdmerchandise.wordpress.com
       vi.    ███████████████████████████

E.    Blogspot Pages:
       i.    http://stdcarriers.blogspot.com
       ii.    http://nolimitlist.blogspot.com

F.    Video Pages:
       i.    http://www.youtube.com/user/nolimitlist
       ii.    http://www.dailymotion.com/STDCarriers
       iii.    www.youtube.com/user/stdcarriersdotcomorg
       iv.    www.youtube.com/user/stdcarriersremixes3
       v.    www.youtube.com/user/vdrecruitment
       vi.    www.youtube.com/user/davidhasselhoffdrunk
       vii.    http://www.youtube.com/user/illegalalienreport

G.    MySpace Pages:
       i.    http://www.myspace.com/nolimitlist
       ii.    http://www.myspace.com/stddatabase

H.    Other Pages:
       i.    http://stdcarriers.typepad.com
       ii.    http://stdcarriers.vox.com
       iii.    http://disqus.com/STDCarriers

12.   **Restitution**:  Defendant agrees, pursuant to 18 U.S.C. § 3663A, to pay full and complete restitution as a condition of any sentence imposed in this matter to the victims of his offense. Defendant also agrees, pursuant to 18 U.S.C. § 3663, to pay $1,000 to the victim of Case Number 10-03-43325 in the Circuit Court of the State of Oregon for Multnomah County in which defendant is charged with recklessly endangering another person, disorderly conduct and criminal mischief.

EXHIBIT __lo 2__

PAGE __3__ OF __3__

## COUNT 2
## [INTERNET STALKING]

On or between August 11, 2009 and June 7, 2012, in the District of Oregon, defendant

Cyrus Andrew Sullivan engaged in a course of conduct with the intent to cause substantial

emotional distress to persons in other States, to wit, posting and facilitating the posting of

malicious information on the Internet about persons in other States and requiring them to pay

defendant Cyrus Andrew Sullivan sums of money in order to have the information removed from

the Internet.    In doing so, defendant Cyrus Andrew Sullivan used an interactive computer service

or a facility of interstate commerce, to wit the Internet, to engage in the course of conduct, and his

course of conduct caused substantial emotional distress to the persons in other States.    All the

aforementioned conduct was in violation of Title 18, United States Code, Sections 2261A(2)(A)

and 2261(b)(5).

Dated this _____ day of October, 2012.

S. AMANDA MARSHALL
United States Attorney


_____
SEAN B. HOAR
Assistant United States Attorney

2 − INFORMATION

EXHIBIT 103
PAGE 1 OF 1

**From:** ████████████████ [██████@eurovps.com]
**Sent:** Tuesday, November 27, 2012 2:50 PM
**To:** ████████████████
**Subject:** [eurovps.com #████] Cyrus Sullivan

Hello,

I apologize in my delay in getting back to you but I had to talk to various members of our staff to get your account details.

The amount that should be allocated during that period is - 1,275.00 EUR

When amount is received, we will restore your services to a new VS8 on our Xen Servers or Cloud services if you would like. - I would suggest dealing with the costs of the new purchase once the latter matter is solved.

If the amount is required because you will be getting compensation for this period, then I will gladly be able to calculate a quote for you.

Best Regards,

████████
Senior Customer Advocate
EuroVPS Internet Services

EXHIBIT __10+__
PAGE __1__ OF __1__

**From:** ▓▓▓▓▓▓▓▓▓▓
**Sent:** Monday, January 21, 2013 12:11 PM
**To:** ▓▓▓▓▓▓▓▓urovps.com
**Subject:** Eurovps.com ▓▓▓▓ Cyrus Sullivan

Our last communications were in November 2012. Thank you for clarifing the pricing 1,275.00 EUR to bring the account current. It would be more helpful if a detailed invoice was available. Still, the amount is clear for that period. It is looking like this will be possible. Cyrus would like an Invoice that includes the current
due with 6 months of hosting his sites with Windows VPS 800 Plan. Thank you.

Sent from my Verizon Wireless 4G LTE Smartphon

1/21/2013

EXHIBIT 105
PAGE 1 OF 1

**From:** ▆▆▆▆▆@eurovps.com>
**Sent:** Wednesday, January 23, 2013 5:14 AM
**To:** 
**Subject:** ▆▆eurovps.com ▆▆▆ Eurovps.com #▆▆ Cyrus Sullivan
**Attachments:** ar_doc_40116.pdf

Hello,

Thank you for contacting EuroVPS Administration, I have attached the requested invoice in PDF format for Mr. Cyrus Sullivan to look over. This is for the renewal of services of 6 months - if you have any questions feel free to ask.

Best Regards,


--
▆▆▆▆
EuroVPS Sales/Administration
Department Manager

1

EXHIBIT __106__
PAGE __1__ OF __2__

As you've noticed, I am very divided in all of this.   Nothing is simple.   Under the circumstances, I won't take up your time with my perspective of things.

Thank you.



_____

**From:** DEMER Kevin [mailto:Kevin.DEMER@mcda.us]
**Sent:** Wednesday, February 13, 2013 3:59 PM
**Subject:** RE: Cyrus A. Sullivan -- DA Case: 2245543-1 Court: 12-06-32556

trial is still set then, but he will be in federal custody after he serves the sentence from his most recent conviction.   The federal case will trump my case.   My current felony case will be dismissed at some point, but there are other possible charges.

Regrettably, he will now spend more time in custody and have more convictions on his record.  Plus, the longer his prison sentence the more likely it is that he will be moved around among different prison facilities.  He could end up on the east coast.

I cannot stress enough to you, that you should never, ever, do anything on-line or on the internet for the benefit or the request of Cyrus while he is in custody.  It just will make things worse for him and possibly for you.  I am sure that if you spoke to his attorneys that they would tell you the same thing.  You do not want to get swept up in this.

His sentencing is set for Friday at 8:30 before Judge Lopez in room 324.

Kevin


Kevin Demer
Deputy District Attorney Multnomah County Unit A
1021 SW 4th Avenue, Suite 800
Portland, Oregon 97204
Voice: 503-988-3922
Fax: 503-988-3947
Intercounty: 101/600/Demer


_____
**From:**
**Sent:** Wednesday, February 13, 2013 1:55 PM
**To:** DEMER Kevin
**Subject:** Cyrus A. Sullivan -- DA Case: 2245543-1 Court: 12-06-32556

EXHIBIT 106
PAGE 2 OF 2

**From:**
**Sent:** Wednesday, February 13, 2013 4:52 PM
**To:** 'DEMER Kevin'
**Subject:** RE: Cyrus A. Sullivan -- DA Case:  2245543-1   Court:  12-06-32556

Thank you.

**From:** DEMER Kevin [mailto:Kevin.DEMER@mcda.us]
**Sent:** Wednesday, February 13, 2013 4:44 PM
**Subject:** RE: Cyrus A. Sullivan -- DA Case: 2245543-1 Court: 12-06-32556

1. Witness tampering and contempt of court, along with more computer crime for how he

2. There are 17 or so state prisons in Oregon. They move people around based upon many factors.  The federal system is much larger, and my experience has been that the longer the sentence, the more likely it is that you are moved around for both state and federal cases.  Additionally, they have population issues and treatment issues, and that has an impact upon placement.  Obviously, prisoners do not get to decide where they are housed. (At least in the federal system, the food both tastes better and is more healthy – with the current fare Cyrus has added several pounds.)

3. We try to resolve cases whenever possible.  It makes sense for everyone, including the tax payers.  My case was a smaller part of a much larger case. A federal judge told Cyrus that, a federal public defendant told Cyrus that, and of course myself and Mr. Sugarman told Cyrus that.

4. I think that will be moot, so I avoided it since the answer is complex and not that helpful.

I welcome your perspective.  You know him better than anyone.  Cyrus scored on the "superior" range on an intelligence test he was recently given.  (His "diminished capacity defense" failed in his trial this week.)  I knew he was smart, but not that smart.  Usually I am able to reason with people and I am disappointed that it did not work out with Cyrus. There is no doubt in my mind that he will spend more time in prison now that he rejected a global deal.  He considers his websites / "company" as his child, and is extremely protective of it, and doesn't want to give up the current websites. We are not trying to bar his work in this field, just make it so it is less offensive and not criminal. But he is a very competent adult and can pick his future.

Kevin

**From:**
**Sent:** Wednesday, February 13, 2013 4:23 PM
**To:** DEMER Kevin
**Subject:** RE: Cyrus A. Sullivan -- DA Case: 2245543-1 Court: 12-06-32556

1. So, what "other possible charges"?

2. Why would he be moved around the country when a Federal prison is located in Oregon?

3. Why is it the State of Oregon has not just attended to the felony charges?

4. What about my question about the subpoena I just got?

EXHIBIT **107**
PAGE **1** OF **1**

**From:**
**Sent:** Friday, March 22, 2013 3:49 PM
**To:** 'Lisa Ludwig'
**Cc:** polson@hoevet-boise.com
**Subject:** RE: Cyrus A. Sullivan 677564

Thank you, Lisa. Property rights was exactly what I thought I was doing when I previously renewed 3 or 4 of his domain names and which got Mr. Demer very upset about and emailed me a warning on the subject as well. I did it then to give Cy some sense of relief as well. I don't believe a person should lose everything while they are in jail awaiting their trial. I have no problem assisting on this limited basis for a domain name renewal. I will try to do it tonight or tomorrow. Now, if I get arrested or accused on this, **your my attorney**.

Per, I just spoke with Cy today. Again, it was hard to understand all that he was saying because of the line/volume. He says you experienced the same problem with hearing him on the phone. I spoke with the service I use for accepting inmate calls and advised them about this. They are going to look into it including contacting Columbia County Jail since it's possible the phone volume is set wrong, needs a repair, or is being selectively controlled at the jail's end. I stressed the problem is very bad and could impact their business. I'll follow-up on this early next week.

Have a nice weekend.



Mail to:

**From:** Lisa Ludwig [mailto:lisa@ludwiglegaldefense.com]
**Sent:** Friday, March 22, 2013 3:20 PM
**Subject:** RE: Cyrus A. Sullivan 677564

Hi there, I just spoke with Per and he caught me up a little on what is going on, and specifically the issue of whether there could be any legal problems for you if you renew the domain name for sullivanbiztech.com (or similar). Based on what Per describes, I don't see any reason it would be a problem for you to do that. It sounds like the purpose would only be to protect Cyrus' proprietary information, and it might give him some valuable sense of security about the issue.

I hope things are going well for you otherwise. I understand there will be another release hearing, so please let me know if you want to chat before then or have any questions. Take care, Lisa

**Sent:** Thursday, March 21, 2013 5:07 PM
**To:** Per Olson

1

EXHIBIT )¦ *08*
PAGE ___1___ OF *1*

Per C. Olson / *Cyrus Andrew Sullivan*
April 12, 2013
Page three of five

6.    <u>No Prosecution</u>:   The USAO agrees not to bring additional charges against defendant in the District of Oregon arising out of this investigation and known to the USAO at the time of this agreement.

7.    <u>Sentencing Factors</u>:   The parties agree to litigate the determination of the applicable advisory guideline range and the relevant factors under 18 U.S.C. § 3553(a).  The United States will likely recommend the following provisions:

    a.    <u>Base offense level</u>:   The USAO will recommend, pursuant to U.S.S.G. § 2A6.1(a)(1), that the base offense level is 12 because the offense of conviction is making a threatening communication.

    b.    <u>Conduct evidencing threat</u>:   The USAO will recommend, pursuant to U.S.S.G. § 2A6.1(b)(1), that the offense level be increased six (6) levels because the offense involved conduct evidencing an intent to carry out the threat.

    c.    <u>Multiple threats</u>:   The USAO will recommend, pursuant to U.S.S.G. § 2A6.1(b)(2), that the offense level be increased two (2) levels because the offense involved more than two threats.

    d.    <u>Obstruction of justice</u>:   The USAO will recommend, pursuant to U.S.S.G. § 3C1.1, that defendant's offense level be increased two (2) levels for obstructing or impeding the administration of justice.

8.    <u>Acceptance of Responsibility</u>:   Defendant must demonstrate to the Court that he fully admits and accepts responsibility under U.S.S.G. § 3E1.1 for his unlawful conduct in this case.  If defendant does so, the USAO will recommend a three (3) level reduction in his offense level if it is 16 or greater, or a two (2) level reduction if it is 15 or less.  The USAO reserves the right to change this recommendation if defendant, between plea and sentencing, commits any criminal offense, obstructs or attempts to obstruct justice as explained in U.S.S.G. § 3C1.1, or acts inconsistently with acceptance of responsibility as explained in U.S.S.G. § 3E1.1.

9.    <u>Conditions of sentence/supervised release</u>:   Among other things, the USAO will recommend that defendant be prohibited from accessing any online computer service or using or possessing any computers, including any handheld or electronic device capable of connecting to any online service or data storage medium, without the prior written approval of the respective U.S. Probation Officer. The USAO understands that defendant will likely object to this recommendation.

10.    <u>Restitution</u>:   Defendant agrees, pursuant to 18 U.S.C. § 3663A, to pay full and complete restitution as a condition of any sentence imposed in this matter to the victim of his offense if defendant is shown to be a proximate cause of any economic loss incurred by the victim.

11.    <u>Detention/Removal of Information Disparaging to Victim</u>:   Defendant agrees to not seek release from custody pending sentencing.  Additionally, prior to sentencing, he agrees to remove or facilitate the removal of any information disparaging to the victim of his offense which was posted on the Internet by him or through websites under his control.  The USAO will

Exhibit 45

Edie Frolichman
RE:  Cyrus Sullivan
June 21, 2013
Page 2

EXHIBIT 109
PAGE 1 OF 1

defendant's unwillingness to delete the posting without charge.  Rather, as she states in her victim impact statement, it was an attempt to divert defendant's attention to her, and away from his other "victims," as she characterizes it.

Recommended Conditions of Supervision.  Defendant objects to conditions that significantly limit or restrict his access to computers or the internet.  Also, condition # 11 does not need to be part of supervised release.  In the plea agreement, defendant agreed to assist in the removal of web postings about Amanda, but that is to occur before sentencing with the assistance of a government agent.  Also, the government was required to ask Amanda to remove her offending posts about defendant.

Release status.  I'd like to work on this paragraph to maximize the chance that the BOP will properly account for credit for time served.  On June 7, 2012, defendant was arrested on the new state charge of Coercion.  (He was arrested on the 7th, but may not have been formally booked until the 8th).  He was not arrested on a Multnomah County bench warrant that day.  I think you're referring to the warrant that had issued for defendant's failure to appear on the misdemeanor case later referenced in paragraph 44.  However, defendant had turned himself in on that warrant on or about May 20, 2012, and the warrant was extinguished.  He appeared in court again on June 1, 2012.  (See OJIN on Case No. 10-03-43325).  So on June 7, when he was arrested on the Coercion charge, there was no outstanding bench warrant.  From June 7 onwards, until he was transferred to the U.S. Marshals Service on February 26, 2013, he was held primarily on the state Coercion charge.  Please make clear that the state Coercion charge that was dismissed involved the same conduct that gave rise to the current federal prosecution.  Also, please make clear that the USM placed a hold on him on or about June 15, 2012, when the federal criminal complaint was filed (Case Number 12-MJ-098).

Paragraph 10: Second sentence, the word "several" should be replaced with "two" as there were only two websites that fit that description.  Third sentence, the phrase that begins, "that they were free of..." should read, "that they were free of sexually transmitted diseases **or** [not and] pay **a different Sullivan controlled website that provided reputation management services ...**"  Also, at the end of the paragraph add, "Alternatively, the person who originally posted the information could remove it at any time by accessing the website with his or her log in information.  Sullivan's website encouraged people to resolve disputes this way."

Paragraph 11: At the end of this paragraph, please add that defendant could not verify the authenticity of the October 4 email because it was an address that was different from the one Groff used to open his account with the website.  Defendant made efforts to have Groff send the email from the verified source, and defendant ultimately was able to verify it in June of 2012.  Groff could have removed the posting at any time by logging in with his user name, and deleting the post.

EXHIBIT   ____

PAGE ____ OF ____



# UNITED STATES DISTRICT COURT
## U.S. Probation Office—District of Oregon
## ADDENDUM

In the matter of:     **U.S.A. v. CYRUS ANDREW SULLIVAN**
Criminal Case No:     **0979 3:13CR00064-1**

The presentence report was made available to both counsels on May 23, 2013. This addendum was furnished to both counsels on June 27, 2013.

## REVISIONS
### By The Probation Officer

**Rationale:**    At the request of defense counsel, the word "bomb" has been replaced with "destructive device."

**Release Status:** Information contained in this paragraph has been clarified.

**Paragraph 21:** Reference to an outstanding bench warrant has been deleted.

**Paragraph 25:** Information regarding threats made by the defendant in Multnomah County Circuit Court has been added.

## RESOLVED OBJECTIONS

**Paragraphs 10, 17-20:**    At the request of defense counsel, wording regarding Sullivan's websites, the sequence of e-mails, and the content of those e-mails has been clarified.

## ADDITIONAL INFORMATION

**Rationale, Paragraphs 10, 11, 15, 19, 20, 21, 22, and 24:**    Defense counsel has provided additional information regarding how information could be deleted from Sullivan's website and Sullivan's explanation that the victim's ex-boyfriend could have deleted it, additional information contained in the e-mails exchanged between the defendant and the victim, evidence as to whether or not the defendant took steps to carry out his threats, statements made by detectives when the defendant was interviewed, the defendant's behavior at a Multnomah County Circuit Court hearing, and information contained in the victim impact statement that does not pertain directly to the defendant.

## UNRESOLVED OBJECTIONS
### By Defense Counsel

**Sentencing Recommendation:** The defendant objects to conditions of supervision that significantly limit or restrict his access to computers or the internet, and also objects to the recommended condition that he assist in the removal of web postings about the victim, stating that removal of postings regarding the victim is part of the plea agreement and will occur prior to sentencing.

CONFIDENTIAL – DO NOT REDISCLOSE

RE:    SULLIVAN, Cyrus Andrew

EXHIBIT __11O__
PAGE __2__ OF __2__

The special condition regarding the defendant's computer and internet use are recommended due to identifiable risks to the community based on the defendant's conduct in the instant offense and personal history. These conditions are intended to assist in the rehabilitation of the defendant and to aid in the protection of society. The other condition to which defense counsel objects, the condition requiring the defendant to remove and/or facilitate the removal of all websites referring to Amanda Machina Falke, maiden name Amanda Kelly, is reflected in the plea agreement. If the postings are removed prior to sentencing as contemplated in the plea agreement, there is no harm. If they are not deleted, the probation officer will be able to enforce the condition upon the defendant's release from custody. The recommended conditions have not been changed. This is an issue for the Court to decide.

**Paragraph 25:** Defense counsel indicates that the conduct reflected in that paragraph is different from the conduct considered by the government in recommending this enhancement. He is correct. The conduct considered by the government has been added. Counsel also states that in the defendant's recorded telephone call to the investigator, "...there was a passing reference to 'the police,' the thrust of this message was to cause Darling to call Amanda and tell her..."

I continue to believe that the content of the message, as well as the defendant's conduct at the July 6, 2012, Multnomah County Circuit Court hearing, was meant to unlawfully influence both the investigator and the victim. Pursuant to USSG § 3C1.1, Application Note #4, I believe a 2-level enhancement should be applied to the advisory guideline level. This is an issue for the Court to decide.

**Paragraph 29:** Defense counsel objects to the 6-level enhancement for conduct evidencing an intent to carry out the threat, stating the defendant was attempting to make his original threat all the more convincing, and is not evidence that the defendant intended to carry out his threat.

I continue to believe that the conduct reflected in this paragraph evidences the defendant's intent to carry out his threats, and that this enhancement applies. This is an issue for the Court to decide.

**Paragraph 30:** Defense counsel objects to the enhancement stating that only one "true" threat was made. He indicates that the victim's response to one of the threats that she was unafraid means it was not a threat.

As stated in the paragraph, I believe that the defendant made three separate threats via e-mail and one via voice mail. I do not believe that a victim's statement that she is unafraid renders a threat moot. I continue to believe that this enhancement applies. This is an issue for the Court to decide.

Any letters received from counsels are attached.

*CONFIDENTIAL – DO NOT REDISCLOSE*

Portland man who ran controversial website sentenced to two years for threats against woman | OregonLive.com                    8/10/16, 9:01 PM

EXHIBIT ___III___
PAGE ___I___ OF ___2___

# Portland man who ran controversial website sentenced to two years for threats against woman

 By Helen Jung | hjung@oregonian.com
Email the author | Follow on Twitter
on July 18, 2013 at 4:49 PM, updated July 20, 2013 at 5:58 PM

Sitting in court, Cyrus A. Sullivan muttered under his breath, warned a federal judge that he would not forgive his lack of "good judgment," and flipped off the woman whom he had been convicted of threatening.

Then, as U.S. Marshals came to lead the 30-year-old Portland man off to jail, he angrily swatted a cup of water across the table before being handcuffed and warned that he could be tased.

Sullivan, his attorney had told the judge just a few minutes prior, "has a way of expressing himself that gets him in trouble."

It also has landed him behind bars. U.S. District Judge Marco Hernandez sentenced Sullivan to two years in prison for threatening a woman in a running dispute over his controversial stdcarriers.com website. The site allows people to post names of people who allegedly have a sexually transmitted disease, and the woman's name had been falsely added by an ex-boyfriend who had previously been convicted of telephonically harassing her.

Hernandez also ordered three years of supervised release after Sullivan completes his prison term. As part of that release, Hernandez said Sullivan may not use computers or similar devices without the written approval of his probation officer in hopes of ensuring that Sullivan doesn't revive the site, which has gained national notoriety, and was featured on CNN.

"I am taking it away," Hernandez said, of the website. Sullivan, however, maintained that "I will run it till the day I die."

The sentencing comes almost two years after the victim learned that her name had been added to the site in September 2011. She sought to have Sullivan remove it, but he did not for several months, according to his court-appointed attorney, Per Olson. Sullivan's policy was to remove postings only if people submitted medical records to him showing they did not have a sexually transmitted disease or if they paid him fees of up to $1,000, Olson wrote in court filings.

Sullivan's refusal to take down her name prompted the victim to fight back, Assistant U.S. Attorney Sean Hoar said.

She also took to the Internet in the escalating conflict, said Sullivan's attorney. The victim anonymously posted Sullivan's personal information including mental health diagnoses, which are believed to have been taken from court documents, he said.

She also anonymously put up taunting videos on YouTube that targeted Sullivan and anonymously sent him an email that included profanity, predictions that he would be abused by convicts in prison and a threat that "we can find you. We can find your family too."

EXHIBIT __/_/_/_
PAGE __2__ OF __2__

The victim also contacted the state's consumer protection division, which had received numerous complaints about the website, for help in dealing with Sullivan.

But last June, Sullivan sent a series of threatening emails to the victim, Hoar said, including some on June 4 that triggered an arrest by police a few days later.

In one e-mail sent that day, Sullivan said "You just don't learn your lessons do you? Now I have no choice but to come to your house armed and put an end to you once and for all. The only way you can stop this is by removing your stalker site and paying me $10,000. You don't have a choice."

He also left a message on the consumer protection investigator's voicemail the next morning saying that he had "put in motions that will kill" the victim, whom he characterized as a "stalker," within 24 hours. He also warned him not to include the police or he too would be targeted.

That, as well as behavior at an earlier Multnomah County Circuit court appearance in which he cocked his hand like a pistol at the victim and yelled at the judge, contributed to the two-year prison term from Hernandez. Two years was the top of the sentencing range under federal guidelines for his conviction of making a threatening communication.

Prior to sentencing, Sullivan addressed Hernandez, saying that he was "sorry that I lost my cool." But Hernandez said that Sullivan seemed to offer only excuses for his threatening behavior that he had been drunk at the time or that he had a short temper. He said nothing to assure the court that he would refrain from such behavior again, Hernandez said.

He also referenced the victim's fear that Sullivan will again target her once he is out of prison. People who experience burglaries, the judge noted, feel violated forever. In the victim's case, "You violated her sense of security in a much more personal and profound way."

The judge imposed several other conditions for his supervised release, including requiring him to allow a search of his computer or other devices if there's reasonable suspicion that he has violated his release. In addition, he is prohibited from having a third-party access computer services for him.

▓▓▓▓▓▓▓▓renewed the registration for the domain names of some of Sullivan's websites, although the registration for STDCarriers.com has not yet expired, said Sullivan's lawyer, Olson.

-- Helen Jung

*This story has been corrected to note that Sullivan's registration of the STDCarriers.com website has not expired since he has been in custody.*

Registration on or use of this site constitutes acceptance of our **User Agreement** and **Privacy Policy**

© 2016 Oregon Live LLC. All rights reserved (**About Us**).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Oregon Live LLC.

**Community Rules** apply to all content you upload or otherwise submit to this site.

▷ **Ad Choices**

EXHIBIT __/_/_2__
PAGE _/_ OF _\_

**From:** ▓▓▓▓▓▓▓@eurovps.com>
**Sent:** Friday, January 24, 2014 3:25 AM
**To:**
**Subject:** [eurovps.com #▓▓▓▓] FW: Eurovps.com #▓▓▓▓ Cyrus Sullivan
**Attachments:** EuroVPS - PR▓▓▓.pdf

Hello,

In regards to your previous mail, we would prefer if you could make a bank wire transfer as this may be easier for you - to avoid having to log into ▓▓▓▓ or pay via Credit Card in the control panel.

The invoice has been attached to this response, and the bank details can be found at the following link: my.eurovps.com/bankdetails.pdf Do let us know if you require any further assistance in making the payment.

Best Regards,

--

EuroVPS Sales/Administration

1

EXHIBIT __11 3__
PAGE __2__ OF __1__

| | |
|---|---|
| **From:** | ▉▉▉▉▉▉urovps.com> |
| **Sent:** | Friday, January 24, 2014 3:28 AM |
| **To:** | ▉▉▉▉▉▉ |
| **Subject:** | [eurovps.com #▉▉▉▉▉] FW: Eurovps.com #▉▉▉▉▉Cyrus Sullivan |

Hello,

Sorry I forgot to mention - in USD this would amount to $1,745.97 according to the exchange rate (1 EUR = 1.36939 USD).

Regards,

--
▉▉▉▉▉
EuroVPS Sales/Administration



EXHIBIT _114_
PAGE _1_ OF _2_

---

**From:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ @eurovps.com>
**Sent:** Saturday, February 01, 2014 12:35 AM
**To:** ▓▓▓▓▓▓▓▓▓▓▓
**Subject:** [eurovps.com #▓▓▓] RE: Invoice #▓▓▓▓ Unpaid Reminder



This invoice has been generated by the system automatically and the payment reminder has been also sent automatically. We have cancelled this invoice, so, please, don't worry about it.

You have all information needed for the payment from my colleague ▓▓▓▓ in the other e-mail of yours, and you can proceed with the payment according to it.

If you have other questions, please, don't hesitate to ask!

On Sat Feb 01 02:28:01 2014, ▓▓▓▓▓▓▓▓▓▓▓ wrote:
> I need to be certain that the invoice is only for paying past services
> owed. I do not want to pay on the full amount if it will result in
> activating the sites again. His case is having a Federal Appeal done,
> so the sites need to remain dormant until the Appeal is heard by the
> court.
>
> Thank you.
>
> ▓▓▓▓▓▓▓▓▓▓
>
> From: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ eurovps.com]
> Sent: Tuesday, January 28, 2014 4:28 AM
> To ▓▓▓▓▓▓▓▓▓▓
> Subject: Invoice #▓▓▓▓ Unpaid Reminder
>
>
> [http://www.eurovps.com/pages/mail_logo.png]<http://www.eurovps.com>
>
> [http://www.eurovps.com/pages/twitter.png]<http://www.twitter.com/euro
> vps> [http://www.eurovps.com/pages/facebook.png]
> <http://www.facebook.com/eurovps>
>
>
>
>
> ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
> ▓▓▓ @eurovps.com<mailto: ▓▓▓ @eurovps.com> | e:
> ▓▓▓▓▓ @eurovps.com<mailto: ▓▓▓▓▓ @eurovps.com>
> w: http://www.eurovps.com
>
>
>
>

1



The European Hosting Authority    **Pro Forma Invoice**

EXHIBIT 114
PAGE 2 OF 3



**Invoice**
**Date of Invoice** 24/01/2014
**Due Date** 24/01/2014

**To:**

Cyrus Sullivan
P.O. Box 86448

Portland, Oregon,  97286
United States
 VAT#

**From:**



**Status: Unpaid**
**Balance: €1,275.00 EUR**

| Description | Taxed | Unit cost | Qty: | Price |
|---|---|---|---|---|
| Legacy VPS Hosting-Windows VM800 (24/01/2014 - 23/01/2015) | Yes | €1,275.00 EUR | 1.00 | €1,275.00 EUR |
| | | **Subtotal** | | €1,275.00 EUR |
| | | **Credit** | | €0.00 EUR |
| | | **Total** | | **€1,275.00 EUR** |

Euclid Services Ltd. 2013

EXHIBIT __11 S__
PAGE __1__ OF __21__

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff-Respondent | ) | |
| | ) | CA No. 13-30207 |
| v. | ) | |
| | ) | |
| CYRUS ANDREW SULLIVAN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

## APPELLANT'S OPENING BRIEF

## JURISDICTION AND TIMELINESS

The District Court had jurisdiction pursuant to 18 U.S.C. §3231. This Court

has jurisdiction pursuant to 28 U.S.C. §1291 and 18 U.S.C. §3742. Notice of

appeal was timely filed pursuant to Fed.R.App.P 4(b) on July 29, 2013 from the

EXHIBIT 11 5
PAGE 2 OF 21

judgment entered on July 19, 2013. *See Judgment* at ER 22-27, and *Notice of*

*Appeal* at ER 28.[1]

## STATEMENT OF ISSUES

This is a criminal case, arising from a guilty plea and sentencing to the crime

of Making a Threatening Communication, 18 U.S.C. §875(c). On appeal,

defendant assigns error to a condition of probation imposed, specifically, special

conditions 7 & 8 as set forth in the Judgment:

> "7.    The defendant is prohibited from using or possessing any computer(s)
> and/or directing third parties to do so on his behalf (including any handheld
> computing device, any electronic device capable of connecting to any on-
> line service, or any data storage media) without the prior written approval of
> the U.S. Probation Officer. This includes, but is not limited to, computers at
> public libraries, Internet cafes, or the defendant's place of employment or
> education.
>
> "8.    The defendant is prohibited from accessing any on-line computer
> service and/or directing third parties to do so on his behalf at any location
> (including employment or education) without the prior written approval of
> the U.S. Probation Officer."

## NATURE OF THE CASE

The government originally charged Appellant by way of indictment. *See*

*Indictment* at ER 1-2. A superseding information was later filed. Appellant pled

---

[1] Excerpts of Record are cited as "ER" throughout this brief.

2

EXHIBIT _ILS_
PAGE _3_ OF _21_

guilty to a single count of Making a Threatening Communication, a violation of 18

U.S.C. §875(c). *See Superseding Information* at ER 3 and *Judgment* at ER 22-27.

The plea agreement included a waiver of appellate rights. Appellant asserts on

appeal the waiver does not apply to unlawful or unconstitutional conditions of

release. The District Court imposed a sentence of 24 months, followed by three

years supervised release with special conditions. On appeal, Appellant challenges

two of the special conditions of release imposed.

## CUSTODY STATUS

Appellant is in federal custody, incarcerated at Federal Correctional

Institution Sheridan. His anticipated release date is July 2, 2014.

## FACTUAL BACKGROUND

The Appellant in this case was the owner and operator of a number of

controversial websites. One of those websites, http://www.stdcarriers.com

garnered considerable national media attention. As discussed in the sentencing

memorandum:

> "Defendant began stdcarriers.com in 2008. It allowed registered users to
> post information about other persons' status as carrying a sexually
> transmitted disease (STD). The account users who posted the information
> were required to read the 'Terms of Use' page on the website, which
> provided, among other things, that the user agreed not to include 'false,

3

EXHIBIT ___
PAGE ___ OF ___

deceptive, misleading, [or] deceitful' information. By using the site, the user also agreed not to 'stalk or harass anyone.'

"The 'Terms of Use' also stated that a user who violates the terms by posting false content would be required to pay liquidated damages of $7,500 to the website and a minimum $5,000 in damages to the defamed person. The 'Disclaimers' section on the website similarly advised that, although postings are published on the condition that they are true, such information could be false and the site 'does not assert that any person listed does in fact have a sexually transmitted disease * * *.' In sum, the site discouraged the posting of false reports, and at the same time, warned that it would be impossible for it to attest to the truthfulness of any information posted by the users.

"If a person found his or her name listed on the site as a person with an STD, that person had various options to seek the listing's removal. The person who originally posted the information could at any time remove the listing by simply logging into the site and deleting the posting. Defendant encouraged listed persons to talk with the person who posted the information about removing it. Alternatively, defendant would remove the posting if the listed person provided medical records showing the person did not have an STD.

"By early 2012, defendant had developed another option for persons listed on his STD site. He launched nolimitlist.com, which, among other functions, allowed users to clean up their online reputation by paying a fee of between $400 to $1000. Upon receipt of the fee, defendant would perform a function that would limit the ability of search engines like Google to lead web surfers to the person's name on the STD website, a sort of reverse form of search engine optimization."

*Defendant's Sentencing Memorandum* at 2-3.

The website, however, simply provides a background for the facts supporting the actual crime of conviction. One person listed on the site, A.K. contacted Appellant to remove her information. This began a long series of email interactions that eventually escalated to threats from both persons. Sentencing Tr at

4

EXHIBIT __11 5__
PAGE __5__ OF __21__

11. Ultimately, Appellant sent A.K. an email stating:

"You don't learn your lessons, do you? Now I have no choice but to come to your house armed and put an end to you once and for all."

Sentencing Tr at 7.

It was that email, and only that email, that formed the basis of Appellant's conviction.

## SUMMARY OF THE ARGUMENT

Appellant's plea agreement contained an appellate waiver. However, that waiver does bar review of the issues in this case. This court has previously held that appellate waivers do not bar review of an unlawful sentence or condition of release. On appeal, Appellant asserts that two of the special conditions of release imposed are unlawful.

Special conditions 7 & 8 imposed by the District Court in this case are unlawful under statute and the Constitution. First, the conditions are unconstitutionally vague, and fail to give a reasonable person adequate notice of what conduct is prohibited. Second, the conditions infringe on Appellant's First Amendment rights, and as such must be narrowly tailored. The conditions fail this requirement. Finally, the District Court did not articulate a basis in the record for concluding that the conditions imposed involve no greater deprivation of liberty than is reasonably necessary.

EXHIBIT _11 S_
PAGE _6_ OF _21_

# STANDARD OF REVIEW

Sentencing decisions are reviewed generally for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (*en banc*). A district court's factual findings underlying a sentence are reviewed for abuse of discretion. *Gall*, 552 U.S. at 46. In contrast, the interpretation and application of the United States Sentencing Guidelines are reviewed *de novo. United States v. Rivera*, 527 F.3d 891, 908 (9th Cir. (2008). Whether appellant has waived his right to appeal is reviewed de novo. *United States v. Jeronimo,* 398 F.3d 1149, 1153 (9th Cir.2005).

# ARGUMENT

## I.    Waivers of appellate rights do not prohibit the appeal of an unlawful release condition

The plea agreement in this case contained a waiver of appeal:

"12. Waiver of Appeal/Post-Conviction Relief: Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that the sentence imposed exceeds the statutory maximum penalty. Should defendant seek an appeal, despite this waiver, the USAO may take any position on any issue on appeal. Defendant also waives the right to file any collateral attack, including a motion under 28 U.S.C.§ 2255, challenging any aspect of the conviction or sentence on any grounds, except on grounds of ineffective assistance of counsel, and except as provided in Fed. R. Crim. P. 33 and 18 U.S.C. § 3582(c)(2)."

*Plea Agreement* 4, ER 13-17.

6



EXHIBIT _115_
PAGE ~~18~~ OF 21
7

"A defendant's waiver of his appellate rights is enforceable if the language of the waiver encompasses his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made." *United States v. Joyce,* 357 F.3d 921, 922 (9th Cir.2004). Plea agreements are interpreted using contract principles with any ambiguity construed in the defendant's favor. *Id.* at 923. "The scope of a knowing and voluntary waiver is demonstrated by the express language of the plea agreement." *United States v. Leniear,* 574 F.3d 668, 672 (9th Cir.2009) (internal quotation marks omitted). This Court has previously held that conditions of release are encompassed under the term "sentence" in an appeal waiver. *Joyce,* 357 F.3d at 924 ("[A] 'sentence' can include fines, periods of imprisonment and supervised release, and mandatory and special conditions of supervised release.")

However, an appellate waiver will not bar review if the sentence imposed was unlawful:

> "An appeal waiver will not apply if: 1) a defendant's guilty plea failed to comply with Fed.R.Crim.P. 11; 2) the sentencing judge informs a defendant that she retains the right to appeal; 3) the sentence does not comport with the terms of the plea agreement; or 4) the sentence violates the law. *See United States v. Portillo-Cano,* 192 F.3d 1246, 1252 (9th Cir.1999) (Rule 11); *United States v. Buchanan,* 59 F.3d 914, 917-18 (9th Cir.1995) (judge informed defendant that he retained his right to appeal); *United States v. Bolinger,* 940 F.2d 478, 479-80 (9th Cir.1991) (sentence not in accord with plea agreement); *United States v. Gordon,* 393 F.3d 1044, 1050 (9th Cir.2004) (illegal sentence)."

*United States v. Bibler,* 495 F.3d 621, 623-24 (9th Cir. 2007).



Because an unlawful condition defeats the appellate waiver, the threshold

question is whether the condition was lawful. *United States v. Watson*, 582 F.3d

974, 987 (9th Cir. 2009). A sentence is illegal if it exceeds the permissible

statutory penalty for the crime or violates the Constitution. *United States v. Fowler,*

794 F.2d 1446, 1449 (9th Cir.1986). As Appellant argues below, the special

conditions imposed in this case both exceed statutory authority, and violate the

Constitution.

## II.    The arguments advanced on appeal are preserved; alternatively appellant asks this court to consider the matter as plain error

Defense counsel objected to the special conditions proposed in the PSR in

his sentencing memorandum:

> "Defendant does not believe that the computer related conditions proposed
> in the PSR are necessary for successful performance on supervised release.
> Defendant's ability to earn an income would be tremendously impacted if he
> is not permitted to have access to computers or the Internet. Defendant
> understands that there may be some monitoring of his computer use, but *he
> objects to restrictions placed on his access to and maintenance of the
> various websites he has developed, none of which are illegal.* See United
> States v. Riley, 576 F3d 1046, 1048 (9th Cir. 2009) (prohibition on internet
> access to material relating to minors was too broad; special conditions of
> probation must be reasonably related to the goals of deterrence, protection of
> the public, and rehabilitation of the offender, and they must involve no
> greater deprivation of liberty than necessary to achieve those goals)."

*Defendant's Sentencing Memorandum* at 20-21, ER 18-19 (emphasis added).

At sentencing, the Appellant himself voiced his objection to the conditions

8

EXHIBIT __1/.5__
PAGE __9__ OF __24__

in a spirited exchange with the District Court:

"[THE COURT]:   What about the computer? Let's talk about that for a minute. I think you have a hard time kind of articulating yourself in front of a judge maybe or in front of other people, so let's move off into something that's a little maybe easier for you to talk about. Do you understand that I'm not going to let you use a computer as a condition of your supervised release? That's not happening without very, very specific controls and observations by somebody else.  And the notion that you're going to continue with your website, it's not happening.

"Now, I don't want to get into a debate with you about whether that website as legal or not, whether you have a First Amendment right or not, because that's not important to me. I'll assume you did have a First Amendment right to run the kind of website you did. Let's operate under the assumption that it's completely legal –

"[THE DEFENDANT]:   It is.

"[THE COURT]:   -- other than the threatening parts of it. I'll assume you're right about that. We don't have to debate that. You abused that right. And once you abuse that right, you now give me the power to control whether or not you will do something that other people can legally do.

"Let me give you an example. When someone commits a DUII, does the Court have the authority to prohibit that person, over the age of 21, from consuming alcohol? It's legal, isn't it? Right?

"[THE DEFENDANT]:   Right.

"[THE COURT]:   The answer is yes, because they abused that right and privilege, and so the Court now has the ability to take it away.

"[THE DEFENDANT]:   I did not abuse the website.

"[THE COURT]:   I am taking it away from you.

"[THE DEFENDANT]:   I did not abuse the website.

"[THE COURT]:   I am taking it away from you.

9

EXHIBIT 15
PAGE 10 OF 21

"[THE DEFENDANT]:   I had every right to run that website, and I will run it until the day I die.

"[THE COURT]:   Very well. I will take that into consideration in determining how long I will put you in prison.

"[THE DEFENDANT]:   Fine.

"[THE COURT]:   Is there anything else you want to tell me?

"[THE DEFENDANT]:   No."

Sentencing Tr 45-46, ER 20-21.

Appellant acknowledges that the objection to the conditions is brief.

However, as this court has held, a failure to object in such situations is not fatal.

"However, in United States v. Consuelo-Gonzalez, 521 F.2d 259 (9th Cir. 1975) (en banc), we rejected the theory that a probationer voluntarily waives his rights by failing, at the sentencing proceeding, to object properly to the conditions imposed...As a practical matter, a defendant's consent to a probation condition is likely to be nominal where consent is given only to avoid imprisonment."

*United States v. Pierce*, 561 F2d 735, 739 (9th Cir 1977) (internal citations

omitted).

Alternatively, if this court finds the issue unpreserved, defendant asks this

court to consider the issue as plain error, pursuant to Federal Rule of Criminal

Procedure 52, which provides:

"(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

10

EXHIBIT 1 L 5
PAGE 11 OF 21

"(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Fed. R. Cr. P. 52.

In applying plain error:

"There must be an 'error' that is 'plain' and that 'affect[s] substantial rights.' Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error ''seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' '*United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936))."

*United States v. Olano*, 507 U.S. 725, 731-32, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993).

### III.   The special conditions of release imposed in this case are unlawful

The special conditions related to computer usage imposed in this case are unlawful in several respects. First, the conditions are unconstitutionally vague. Second, they impermissibly infringe on Appellant's First Amendment rights. Finally, the District Court failed to articulate any basis justifying the infringement on Appellant's rights.

### a. The special conditions are unconstitutionally vague and deprive Appellant of reasonable notice.

Due Process requires that government imposed prohibitions be specific enough that they give a reasonable opportunity to know what is prohibited.

11

EXHIBIT __l_l_S__
PAGE __12__ OF __21__

"First, because we assume that man is free to steer between lawful and
unlawful conduct, we insist that laws give the person of ordinary intelligence
a reasonable opportunity to know what is prohibited, so that he may act
accordingly.... Second, ... [a] vague law impermissibly delegates basic policy
matters to policemen, judges, and juries for resolution on an *ad hoc* and
subjective basis.... Third ... where a vague statute abuts upon sensitive areas
of basic First Amendment freedoms, it operates to inhibit the exercise of
[those] freedoms. "

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222

(1972) (internal citations and quotation marks omitted).

Vagueness applies to conditions of release. *See, e.g., United States v.*

*Schave*, 186 F.3d 839 (7th Cir.1999) (citing *Birzon v. King*, 469 F.2d 1241, 1243

(2d Cir.1972)); *LoFranco v. United States Parole Comm'n*, 986 F.Supp. 796, 810–

11 (S.D.N.Y.1997). A condition of release is unconstitutionally vague if it "either

forbids or requires the doing of an act in terms so vague that men of common

intelligence must necessarily guess at its meaning and differ as to its application."

*Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322

(1926); *United States v. Loy*, 237 F.3d 251, 262 (3d Cir. 2001); *United States v.*

*Soltero*, 510 F.3d 858, 865-66 (9th Cir. 2007) (holding same).

This court has previously held that blanket prohibitions similar to the

conditions imposed in this case were unconstitutionally vague. In *Stoterau*, a case

involving child pornography, this court held:

"Condition 11 states that, '[t]he defendant shall not access via computer any
material that relates to pornography of any kind.' Stoterau argues that the
word 'pornography' is too vague to put him on notice of what material is

12

EXHIBIT _115_
PAGE _13_ OF _21_

prohibited. We have previously held in the supervised release context that the word 'pornography,' without more, is too vague to put the defendant on notice of 'what conduct will result in his being returned to prison.' * *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir.2002). We explained:

"....

"... Condition 11 here leaves Stoterau 'in the untenable position of discovering the meaning of his supervised release condition only under continual threat of reimprisonment, in sequential hearings before the court.' *Id*. (internal quotation marks omitted). Accordingly, following *Guagliardo*, we vacate this condition and remand for the district court to impose a condition with greater specificity."

*United States v. Stoterau*, 524 F.3d 988, 1002-03 (9th Cir. 2008).

In this case, not only does the condition prohibit Appellant's possession of virtually any modern appliance with a computer chip, it additionally prohibits anyone from using a computer at his discretion. When Appellant goes to the doctor, the office will look up his health records on a computer. Is that prohibited? When he goes to the DMV to renew his driver's license, the employee will access his records online. Has Appellant violated probation? Is Appellant prohibited form using his Safeway Club Card, or his Debit card? When he swipes either he is using a computer device connected to the internet. The condition fails to guide a reasonable person in their daily activities.

Further, the fact that the conditions are modified by the potential involvement of a probation officer does not mitigate the problem. As this court has made clear:

EXHIBIT _11S_
PAGE _14_ OF _21_

"A probationer must be put on clear notice of what conduct will (and will not) constitute a supervised release violation, a rule that is of particular importance when the condition seems to reach constitutionally protected conduct...An overly broad condition like this one cannot be 'saved' merely because the government promises to enforce it in a narrow manner."

*Soltero*, 510 F.3d at 867; see also *Loy*, 237 F.3d at 266 (A vague supervised release condition "cannot be cured by allowing the probation officer an unfettered power of interpretation, as this would create one of the very problems against which the vagueness doctrine is meant to protect, *i.e.,* the delegation of 'basic policy matters to policemen ... for resolution on an ad hoc and subjective basis.' ").

**b. The special conditions are overly broad, not narrowly tailored, and unconstitutionally infringe on Appellants First Amendment rights of expression.**

First, it is important to remind this court what is not in dispute in this case: the legality of Appellant's websites. Appellant operated a series of websites that many people, the media, and the government found highly offensive and objectionable. Defendant, like Larry Flint and others before him, is unquestionably a provocateur. But it is without debate that the First Amendment protects "a wide variety of speech that listeners may consider deeply offensive, including statements that impugn another's race or national origin or that denigrate religious beliefs." *Saxe v. State Coll. Area Sch. Dist.,* 240 F.3d 200, 206 (3d Cir. 2001) citing *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430

EXHIBIT __11 5__
PAGE __15__ OF __21__

(1969); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213

(1940).

No court has ever held that Appellant's websites were illegal, or that the

operation of those websites did not fall within the protections of the First

Amendment. The record in this case is plain; the purpose of the release conditions

sought by the government, and imposed by the District Court, serve as an end-run.

The District court made that clear when it said "the notion that you're going to

continue with your website, it's not happening... I am taking it away from you."

Sentencing Tr 45-46. Unable to shut down the websites, the District Court ordered

the site's owner to not have any contact with computer equipment, or direct anyone

else to do so. This effectively shuts Appellant out from his otherwise lawfully

protected First Amendment activity.

Turning to the release conditions themselves, a condition is within the

court's discretion if two criteria are met. First, the condition must be reasonably

related to the factors set forth in 18 U.S.C. § 3553(a)(1) & (2)(B)-(D). In imposing

conditions of supervised release, the sentencing court may consider: (1) the nature

and circumstances of the offense and the history and characteristics of the

defendant; and (2) the need for the condition to deter future criminal conduct,

protect the public, and provide the defendant with necessary training, medical care,

or other correctional treatment. *See* 18 U.S.C. § 3553(a)(1) & (2)(B)-(D).

15

EXHIBIT _115_
PAGE _16_ OF _21_

When a release condition infringes on a constitutionally protected right the condition must "involve 'no greater deprivation of liberty than is reasonably necessary for the purposes' of supervised release'-that is, to achieve deterrence, public protection, or offender rehabilitation." *United States v. Sales*, 476 F.3d 732, 735 (9th Cir. 2007) (internal citations omitted). Further, a condition that restricts fundamental rights must be "narrowly tailored and ... directly related to deterring [the defendant] and protecting the public." *United States v. Crandon*, 173 F.3d 122, 128 (3d Cir. 1999); see also *Sales*, 476 F.3d at 737 (condition "must be narrowly tailored-producing no greater deprivation of liberty than is reasonably necessary.').

Even without Appellant's history with his websites, just the general prohibition on computers implicates First Amendment concerns. Computers are the principle First Amendment medium of our age. *State v. Nordlund*, 113 Wash App 171, 181-82, 53 P 3d 520, 525 (2002) (noting the computer as "the modern day repository of a man's records, reflections, and conversations" and thus implicating the First Amendment), see also *United States v. Rearden*, 349 F.3d 608, 620 (9th Cir. 2003) ("We recognize the importance of the Internet for information and communication...")

Courts afford heightened protection to First Amendment instruments. The warrantless seizure of such material is a form of prior restraint, a long disfavored practice. *Roaden v. Kentucky*, 413 U.S. 496, 503 (1973) (when an officer "br[ings]

EXHIBIT ⊥⊥5
PAGE ⊥7 OF 2⊥

to an abrupt halt an orderly and presumptively legitimate distribution or

exhibition" of material protected by the First Amendment, such action is "plainly a

form of prior restraint and is, in those circumstances, unreasonable under Fourth

Amendment standards."). *See also Rossignol v. Voorhaar*, 316 F.3d 516, 522 (4th

Cir. 2003) (Where sheriff's deputies suppressed newspapers critical of the sheriff

"before the critical commentary ever reached the eyes of readers, their conduct met

the classic definition of a prior restraint.")

The computer is now the dominant source of access to news, opinion, and

critical information. It is how people order their lives. The computer accesses

financial records, health records, and other critical life documents. The computer

is the gateway to employment, both in searching for work, as well as applying for a

job. Finally, the computer is a necessary mechanism for basic communication,

staying in touch with relatives, and talking with loved ones. Because the

computer is the nexus for a host of First Amendment activities, removing access to

such a device can be permissible only in the most narrow of circumstances –

circumstances not present in this case. When faced with a close call, "the First

Amendment requires [courts] to err on the side of protecting * * * speech rather

than suppressing it." *Federal Election Commission v. Wisconsin Right to Life, Inc.*,

551 U.S. 449, 457 (2007). *See also Bertot v. School Dist. No. 1, Albany County,*

*Wyo.*, 613 F.2d 245, 252 (10th Cir. 1979) ("We prefer that governmental officials

17

EXHIBIT __1 15__
PAGE __18__ OF __21__

acting in sensitive First Amendment areas err, when they do err, on the side of

protecting those interests.").

Courts have already prohibited such extreme computer restrictions in more

serious cases such as child pornography. In *Freeman*, the Third Circuit struck

down a ban on computer equipment identical to the one in this case:

> "We also agree with Freeman that a special condition forbidding him from
> possessing any computer in his home or using any on-line computer service
> without the written approval of the probation officer is overly broad; it
> involves a greater deprivation of liberty than is reasonably necessary to deter
> future criminal conduct and to protect the public. 18 U.S.C. § 3553(a)(2).
> *United States v. Sofsky,* 287 F.3d 122, 124 (2d Cir.2002) (vacating condition
> that would require probation officer to approve all computer and internet
> access by a defendant who pled guilty to receiving child pornography over
> the internet).
>
> "As in *Sofsky,* a total ban on internet access prevents use of email, an
> increasingly widely used form of communication, and other common-place
> computer uses such as getting a weather forecast or reading a newspaper
> online. *Id*. at 126. There is no need to cut off Freeman's access to email or
> benign internet usage when a more focused restriction, limited to
> pornography sites and images, can be enforced by unannounced inspections
> of material stored on Freeman's hard drive or removable disks. *Id*.

*United States v. Freeman,* 316 F.3d 386, 391-92 (3d Cir. 2003).

In this case, defendant was convicted of a single email threat, made to a

single person. Defendant was not convicted of making mass threats via the

internet. By analogy, if this were a child pornography case, would the ban on

computers be reasonably related to the offense and narrowly tailored if defendant

18

EXHIBIT __115__
PAGE _19_ OF _21_

was in possession of a single illegal photograph? No case in any jurisdiction

supports that conclusion. Likewise, a complete ban not only on computer

possession or use by defendant, but by anyone acting on his behalf, is far too

overbroad. It is not reasonably related to the offense, nor to the goals of protecting

the public, and is not narrowly tailored to "involve 'no greater deprivation of

liberty than is reasonably necessary for the purposes' of supervised release'-that is,

to achieve deterrence, public protection, or offender rehabilitation." *Sales*, 476

F.3d at 735.

### a. The special conditions are not supported by an articulated basis in the record

A sentencing judge need not articulate the reasoning behind a special

condition if the record is sufficient to deduce whether the court abused its

discretion. *Watson*, 582 F3d at 983 (9th Cir 2009). "However, to impose a

condition that implicates a significant liberty interest, the district court must

support its decision on the record with evidence justifying the condition." *United*

*States v. Daniels*, 541 F.3d 915, 924 (9th Cir.2008). Specifically, a District Court

"must support its decision [to impose the condition] on the record with record

evidence that the condition of supervised release sought to be imposed is necessary

to accomplish one or more of the factors listed in § 3583(d)(1) and involves no

greater deprivation of liberty than is reasonably necessary." *United States v.*

EXHIBIT _11 5_

PAGE _20_ OF _21_

*Stoterau,* 524 F.3d 988, 1005 (9th Cir. 2008) citing *United States v. Weber*, 451

F.3d 552, 561 (9th Cir. 2006).

   Here, the District Court offered no articulated rationale why the sweeping

ban was necessary or warranted. No calculation was articulated about what

limitations on computer usage would be necessary versus extreme. Rather, the

District Court was simply fixated on "the notion that you're going to continue with

your website, it's not happening... I am taking it away from you." Sentencing Tr

45-46. That fails to satisfy the requirement of evidence in the record supporting

that the restriction involves no greater deprivation of liberty than is reasonably

necessary.

EXHIBIT _|| S_
PAGE _2(_ OF _2(_

## CONCLUSION

For the foregoing reasons, the District Court erred in imposing the special

conditions of release.

RESPECTFULLY SUBMITTED this 27th day of November, 2013.

/s/ Bronson James

Bronson James
Attorney for Defendant-Appellant

21

EXHIBIT 116
PAGE 1 OF 1

**From:**
**Sent:** Monday, May 05, 2014 5:42 PM
**To:** eurovps.com'
**Subject:** RE: [eurovps.com # ] Resolved: FW: Eurovps.com # Cyrus Sullivan

Thank you.  Would it be possible for an Invoice to be done that includes re-activation of the websites for a 6 months period?

I would like the option of paying the bill with inclusion of activation.

Thank you so much.

-----Original Message-----
@eurovps.com]
Sent: Tuesday, April 29, 2014 12:05 AM
Subject: [eurovps.com # Resolved: FW: Eurovps.com # Cyrus Sullivan

According to our records, your request has been resolved. If you have any further questions or concerns, please respond to this message.