UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CYRUS ANDREW SULLIVAN

                Plaintiff,

v.

SCOTT ALLEN BREITENSTEIN

                Defendant.

Case No. 3:16-cv-01743-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Self-represented plaintiff Cyrus Andrew Sullivan ("Sullivan") seeks monetary and injunctive relief against defendant Scott Allen Breitenstein ("Breitenstein") for alleged trademark and copyright infringement in violation of 15 U.S.C. § 1125 and 17 U.S.C. § 501. Before the court is Sullivan's Motion for Substituted Service Authorization ("Motion"). (Pl.'s Mot. for Sub. Service, ECF No. 33,

("Motion").) Since filing his complaint, Sullivan has, through the United States Marshals Service ("Marshals"), repeatedly attempted to effect service on Breitenstein. Sullivan requests that the court consider Breitenstein served, order the Marshals to provide Sullivan with transportation to any hearings in this matter, and order Sullivan's incarceration to remain in this district until this case is resolved. For the reasons set forth below, the Motion is denied.

*Background*

Sullivan filed this suit August 31, 2016, and the court granted him *in forma pauperis* ("IFP") status, (ECF No. 2, 4) placing the responsibility of serving the defendant on the Marshals. FED. R. CIV. P. ("Rule") 4(c)(3). On September 23, 2016, the court issued a summons for Breitenstein and forwarded all relevant documents, specifically the summons and complaint, to the Marshals for service. (ECF No. 6.) An internet search revealed Breitenstein's last known address to be on Bidleman Street in Dayton, Ohio. (ECF No. 7.) On September 28, 2016, the documents were forwarded by regular mail to the Southern District of Ohio for service via Federal Express. (*Id.*) On September 30, 2016, the package was returned to the Marshals marked "Return to Sender - Moved." (*Id.*) No further attempts to serve Breitenstein were made at that time, and return of service was entered in the record as "unexecuted" on December 7, 2016. (*Id.*)

On January 18, 2017, the court issued an Order to Show Cause requiring Sullivan to demonstrate in writing why the case should not be dismissed for lack of service.[1] (ECF No. 12.) After a show cause hearing on January 27, 2017, the court granted Sullivan an extension of time to

---

[1] Rule 4(m) provides "[i]f a defendant is not served within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

serve Breitenstein at a second address on Mumma Avenue in Dayton, Ohio. (ECF No. 17.) The Marshals sent the complaint and summons to the alternate address by certified mail, but the documents were returned on January 30, 2017, marked "Return to Sender, No Such Number, Unable to Forward." (ECF No. 18.) Return of service was again entered in the record as "unexecuted" on February 9, 2017. (*Id.*)

On March 10, 2017, the court issued a second Order to Show Cause, requiring Sullivan to appear at a hearing scheduled for March 27, 2017, and to articulate in writing whether good cause existed to dismiss the action for lack of service. (ECF No. 19.) On March 21, 2017, Sullivan moved to postpone the hearing, citing his recent arrest and incarceration in an unrelated criminal matter, and requested postponement until after a re-trial in his criminal case. (ECF No. 20.) The court granted Sullivan's motion, and postponed the hearing. (ECF No. 21.) Sullivan's criminal case was delayed, and the court rescheduled the show-cause hearing in this case for July 21, 2017. (ECF Nos. 23–4, 25–6.)

On March 24, 2017, the Marshals again attempted service by mail at Mumma Avenue in Dayton, Ohio. (ECF No. 30.) The documents were sent by certified mail, and the United States Postal Service's electronic tracking record indicates that the package was delivered and left with "an individual at the address" on April 7, 2017. (*Id.*) Return of service was entered in the record as "executed" on June 12, 2017. (*Id.*) Based on "the apparent service of defendant Breitenstein," the court struck as moot the July show-cause hearing. (ECF No. 31.)

On June 13, 2017, however, an amended summons was issued and all proposed exhibits forwarded to the Marshals with a request to effect personal service on Breitenstein at the Bidleman Street address. (ECF No. 29.) On June 21, 2017, personal service was attempted at the Bidleman

PAGE 3 - OPINION AND ORDER {KAI}

address, but no one was home. (*Id.*) On June 23, 2017, an unnamed party answered the door, but claimed Breitenstein did not live at that address and refused service. (*Id.*) On June 29, 2017, service was again refused at the Bidleman Street address. The Marshal process server subsequently tried "another address," and was told that Breitenstein "[d]oesn't live there." (*Id.*) Return of service was entered in the record as "unexecuted" on July 17, 2017. (ECF No. 32.)

According to Sullivan's Motion, Breitenstein received by service the summons, complaint, and proposed exhibits from "a third party process server," Mobley Reporting, in May 2017 through Breitenstein's wife, who accepted and signed for the documents at the Bidleman Street address. (Motion, 2.) Sullivan claims that, after service was executed, his agent attempted to provide the court with proof of service, but "the clerk advised . . . that the Summons that had been given to the process server in Ohio lacked the proper court seal on it." (*Id.*) Consequently, Sullivan asserts he relied on the Marshals to serve Breitenstein "the Summons with seal," but the Marshals' efforts were unsuccessful. (*Id.*) Sullivan provides no supporting documentation for these statements.

After many failed attempts to serve Breitenstein, Sullivan filed this Motion on October 13, 2017. (ECF No. 33.)

*Legal Standard*

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Federal Rule of Civil Procedure ("Rule")] 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982). Rule 4 is flexible and should be liberally construed when the defendant receives adequate notice of the complaint against him. *United Food & Commercial Workers Union, Locals 197, 373, 428, 588, 775, 839, 870, 1119, 1179, and 1532 v.*

*Alpha Beta Co.*, 736 F.2d 1325, 1326 (9th Cir. 1985). However, "neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction" unless the plaintiff substantially complies with the requirements of Rule 4. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (citing *Jackson*, 682 F.2d at 1347).

Proper service on an individual is governed by Rule 4(e). Under Rule 4(e), service may be effectuated by "following state law . . . in the state where the district court is located *or* where service is made," FED. R. CIV. P. 4(e)(1) (2017) (emphasis added). Substituted service — leaving a copy of the summons and complaint at "the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there" — is also adequate under Rule 4(e). FED. R. CIV. P. 4(e)(2)(B).

*Discussion*

Sullivan asserts Breitenstein was effectively served through Mobley Reporting's alleged substituted service in May 2017 because the relevant documents were delivered to the Bidleman Street address in Dayton, Ohio, and Breitenstein's wife allegedly accepted and signed for the documents on his behalf. (Motion, 3.) Alternatively, Sullivan argues that even if substituted service was not effectuated, the court should consider Breitenstein served because Breitenstein is aware of the complaint against him and has access to the publicly available court calendar to keep abreast of this case. (*Id.*)

There is no evidence in the record, however, to corroborate Sullivan's claims that a third party process server successfully delivered the complaint and summons in May 2017. The only reference to Mobley Reporting in the record is a statement in Sullivan's Motion. (*See* Motion, 2.) The record reflects only the Marshals' attempts to serve Breitenstein, all of which have been

unsuccessful, except the delivery of the complaint to the Mumma Avenue address by certified mail on April 7, 2017. Absent any supporting evidence, the court does not address the sufficiency of the alleged substituted service in May 2017. Rather, the court considers only whether the Marshals' April 2017 delivery of the documents at Mumma Avenue substantially complied with Rule 4's requirements.

Rule 4 does not explicitly mention service by mail, but such service is constitutionally sufficient when effectuated according to state law in either the district where the suit was filed or the district where service is made. FED. R. CIV. P. 4(e)(1). Here, delivery by certified mail is sufficient under Rule 4 if it complies with the rules governing service by mail in either Oregon or Ohio.

I.   ORCP 7 D

Oregon Rule of Civil Procedure ("ORCP") 7 D governs service of process in Oregon. ORCP 7 D(1) establishes a "reasonable notice" standard for assessing the adequacy of service, requiring that the summons and complaint be served "in any manner reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend." OR. R. CIV. P. 7 D(1) (2017). For guidance, ORCP 7 D(2) describes specific methods of service, including service by mail, that may meet the reasonable notice standard. *Baker v. Foy*, 310 Or. 221, 225 (1990) (citing OR. R. CIV. P. 7 D(1)). Absolute compliance with the methods described in ORCP 7 D(2) is not required, but whatever manner of service is used must satisfy the "reasonable notice" standard contemplated by ORCP 7 D(1). *Id.*

In *Baker*, the Oregon Supreme Court established a two-prong test to evaluate the sufficiency of service under ORCP 7 D. First, the court must determine whether "the method in which service of summons was made [was] one of those methods described in ORCP 7 D(2), specifically permitted

for use upon the particular defendant by ORCP 7 D(3), and accomplished in accordance with ORCP 7 D(2)." *Davis Wright Tremaine, LLP v. Menken*, 181 Or. App. 332, 337 (2002) (quoting *Baker*, 310 Or. at 228). Service satisfying the first prong of the *Baker* test is presumptively adequate and thus effective unless the defendant is able to overcome the presumption. *Id.* If the method of service used is not presumptively adequate, the court must then consider whether service nevertheless satisfies the reasonable notice standard of ORCP 7 D(1). *Id.* If the method of service does not amount to reasonable notice, service is invalid. *Id.*

Applying the *Baker* framework here, service by mail is explicitly identified by ORCP 7 D(2), which allows service to be effected "by mailing true copies of the summons and complaint to the defendant by . . . certified . . . mail with return receipt requested." OR. R. CIV. P. 7 D(2)(d)(i). Such service on Breitenstein, however, is presumptively valid only if he "signs a receipt for the certified . . . mailing." OR. R. CIV. P. 7 D(3)(a)(i).

The United States Postal Service tracking log shows that the documents were "delivered to an individual at the [Mumma Avenue] address," (ECF No. 30), but there is no indication the Marshals restricted delivery so as to permit only Breitenstein to sign for the package. Thus, there is no proof in the record that Breitenstein, rather than another individual residing at the Mumma Avenue address, signed for the documents delivered on April 7, 2017. Because certified mail may not be used to serve an individual unless the defendant personally signs for it, the April 2017 mailing is not presumptively valid under Oregon law.

Turning to the second prong of the *Baker* test to determine whether service nevertheless satisfies ORCP 7 D(1)'s reasonable notice standard, Sullivan argues that Breitenstein has received actual notice of the suit against him because someone at the Mumma Avenue address signed for and

accepted the documents and therefore, he should be considered served.

First, "as a practical matter, that fact would seem all-important. But legally, under Oregon's sufficiency of service rules and related jurisprudence, actual notice is, essentially, irrelevant." *Menken*, 181 Or. App. at 338–39 (citing *Jordan v. Wiser*, 302 Or. 50, 60 (1986)). ORCP 7 D(1) thus is focused not on the defendant's subjective notice, but on whether "the plaintiff's effort to effect service [was] reasonably calculated, under the totality of the circumstances then known to the plaintiff, to apprise the defendant of the pendency of the action[.]" *Id.* at 339.

Second, in *Murphy v. Price*, 131 Or. App. 693, 697 (1994), *rev. denied* 321 Or. 137 (1995), the Oregon Court of Appeals determined that service by unrestricted certified mail was insufficient, noting that:

> anyone at [defendant's] address — a roommate, a neighbor, defendant's landlord — could have signed for the receipt of the summons and complaint, with no assurances that defendant would ever see the papers. In other words, plaintiff did not know who would actually receive the summons and complaint once they were delivered to the location that defendant listed as his address.

Thus, "as a general rule, service by mail on an individual must be by restricted delivery — *i.e.*, only the person being served can either accept or refuse the mailing — to satisfy the reasonable notice standard of ORCP 7 D(1)." *Menken*, 181 Or. App. at 341.

Based on the record at the time of attempted service, there is no indication Sullivan and Britenstein had ever met or communicated, or that Breitenstein had any other reason to know of the suit against him. The two addresses associated with Breitenstein were found on internet websites, and there is nothing to confirm that either address is currently Breitenstein's usual place of abode. Moreover, it appears the certified mailing was unrestricted, (ECF No. 30), meaning anyone at the Mumma Avenue address could have signed for the documents. As explained in *Murphy*, the

PAGE 8 - OPINION AND ORDER                                                                                              {KAI}

unrestricted certified mailing does not satisfy ORCP 7 D(1)'s reasonable notice requirement. Additionally, there is no evidence that Sullivan or the Marshals took any other measures, such as contacting Breitenstein prior to attempting service by mail to inform him that mail service was imminent or attempting to verify where Breitenstein lived, to provide reasonable notice of the pendant action. *Id.* at 342. Accordingly, the April 2017 service was not valid under Oregon law.

II.  Ohio Rule of Civil Procedure. 4.1

Ohio Rule of Civil Procedure 4.1 governs service of process in Ohio, where service was allegedly made. "[S]ervice of process [in Ohio] shall be by United States certified or express mail" unless otherwise allowed by the rules. OH. R. CIV. P. 4.1(A)(1)(a). Proper service is "[e]videnced by a return receipt signed by any person." *Id.* In contrast to Oregon law, service by certified mail in Ohio does not require restricted delivery to the defendant or his agent; rather, delivery to *any* person at the defendant's dwelling is acceptable if it is confirmed by a signed receipt. *Brownfield v. Krupman*, No. 14AP-294, 2015 WL 2452048, at *4 (Ohio Ct. App. May 21, 2015). Production of a signed receipt therefore raises a rebuttable presumption that service was proper. *Breezley v. Hamilton County*, 674 Fed. Appx. 502, 506 (6th Cir. 2017) (citing *Ohio Civ. Rights Comm. v. First Am. Properties, Inc.*, 113 Ohio App.3d 233, 239 (1996)).

*Wilcox v. Ohio Penal Industries*, No. 1:07cv554, 2008 WL 3876756, at *1 (S.D. Oh. Aug. 20, 2008) is instructive. In that case, an inmate filed a prisoner civil rights action *in forma pauperis*. The Marshals sent the complaint and summons to the defendant via certified mail, and a CM/ECF docket entry indicated that service had been executed. *Id.* Though the entry reflected that the postal tracking website showed the documents had been delivered, the receipt indicating the certified mailing had been received had not been returned. *Id.* Because a signed receipt was not in the record,

the court determined that service of process was not properly effected. *Id.* at *3.

Here, as in *Wilcox*, the record reflects that service was executed at Mumma Avenue, but does not include a signed copy of the receipt as required by the Ohio Rules of Civil Procedure. The postal tracking record indicates the summons and complaint were delivered to an individual at that address, but without a signed receipt, service is sufficient under Ohio Rule of Civil Procedure. 4.1(A)(1)(a), and is thus invalid under Rule 4(e).

III. Plaintiff's Additional Requests

Sullivan also asks this court to order the Marshals to provide transportation to and from the correctional facility at which he is currently being held in conjunction with his criminal case for any hearings in this matter. He also asks this court to order that Sullivan remain incarcerated in this district until his civil case is resolved. Neither request is ripe for decision. Currently, there are no pending hearings in this case, and the court is unaware of any impending order to transfer Sullivan to a different correctional facility. Accordingly, the court declines to address those requests.

IV. Further Service Attempts

The responsibility of serving Breitenstein does not fall solely on the Marshals; "a pro se plaintiff must [] properly instruct the process server." *Kiley v. Kurtz*, 533 F. Supp. 465, 467 (E.D. Col. 1982). The Marshals' duty to effect service on behalf of an IFP plaintiff is limited to "execut[ing] service in the requested manner, not [determining] whether the requested service will be effective." *Id.* When that duty is faithfully executed but service still is unavailing, Rule 4 does not require the Marshals to continue their efforts indefinitely until proper service can be effected. *See Jenson v. Knowles*, 621 F. Supp. 2d 921 (E.D. Cal. 2008) (directing Marshals to reattempt service after one failed attempt, and if that attempt was unsuccessful, requiring IFP plaintiff to

provide new information about the defendant's location within 60 days). The Marshals here have made seven attempts to serve Breitenstein, who remains unserved nearly two years after the complaint was filed. Sullivan retains the onus to provide the Marshals with sufficient information to perfect service on Breitenstein.

*Conclusion*

For the reasons stated above, Sullivan's Motion for Substituted Service Authorization (#33) is DENIED. Because the Marshals have fulfilled their responsibilities under Rule 4, Sullivan must provide the court with additional information to help effectuate service on Breitenstein within 30 days. Failure to do so may result in dismissal of this case without prejudice.

DATED this 12th day of April, 2018.

JOHN V. ACOSTA
United States Magistrate Judge

/////

/////

/////

/////

/////

/////

/////

/////