Cyrus Sullivan
P.O. Box 86653
Portland, OR 97286

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
### PORTLAND DIVISION

CYRUS ANDREW SULLIVAN

3:16-CV-01743-AC

SCOTT ALLEN BREITENSTEIN

## MOTION FOR EXTENSION OF TIME

I, the plaintiff, Cyrus Andrew Sullivan, Pro Se, hereby request that the court extend its deadline to effectuate service on defendant Breitenstein by 60 days. That should extend the deadline from May 12, 2018 as described in the Court's Opinion and Order ("Opinion and Order") of April 12, 2018 (E.C.F. 36 p. 11) to on or about July 11, 2018. This extension is needed due to ongoing criminal matters, the current state of the record, and logistical issues.

## CRIMINAL MATTERS

My trial in case number 3:17-CR-00306-HZ will take place on May 21, 2018 and

PAGE 1

should last 5 days. I am confident that I will be found not guilty and will be able to personally serve Breitenstein through a process server in Dayton, Ohio once released. If I am convicted I will not seek another extension to serve Breitenstein and if acquitted I can't think of any reason why I would not be able to serve Breitenstein by July.

As of now I have used my trademarks in commerce as recently as April 2018 by selling a small quantity of STDcarriers.com t-shirts. The website itself should be back online no later than August 2019 when my terms of supervised release are scheduled to end. If convicted this would change.

## STATE OF THE RECORD

I was surprised to learn that the entry into the record as "re-executed" on June 12, 2017 (opinion and order p. 3) was due to certified mail sent to Mumma Avenue and not the giving of the complaint to Breitenstein's wife by Matthew Reporting in May 2017. I was under the impression

PAGE 2

that either Mobley Reporting or the person that hired them for Mehalls returned service as executed only to learn from the clerk that the summons lacked the proper seal. I am puzzled to learn that no documentation was filed with the clerk (opinion and order p. 4).

Knowing that Breitenstein's wife and therefore Breitenstein himself could be located at the Biddlemen Street address, I agreed to give the Marshals another try, but of course they were told he was not there. I tried to use Mobley Reporting again, but the person that hired them refused. She said she thought she had done all she could when in fact she could have done it right. She also indicated that she didn't think it would be worth the money, which translates to a lack of confidence in Mobley Reporting on her end due to the failed attempt to serve documents that she herself prepared improperly. Feeling underappreciated for her efforts and expenses she felt the best way to command respect on her end would be to stop helping me and blame me for being incarcerated even though I am innocent. When asked about

PAGE 3

these things this morning. She claimed to be unable to remember the specifics of anything due to passage of time and said that I had gotten myself into this situation, even though she knows I am not guilty. Some people still blame inmates for motivating the police to put them in jail whether or not they are actually guilty of the charges.

I cannot provide documentation of Mobley's activities at this time because my copies of the documents were destroyed by staff at FCI Sheridan in December 2017. This was documented in case number 3:17-CR-00066-HZ and a copy of the Declaration of Tiffany Harris (Exhibit 1) is attached to this motion. As you can see, "staff members... purposefully placed oil-soaked food (canned fish) on legal documents" (Exhibit 1 p. 3) including my previous motion and stuff from Mobley. I am attempting to obtain copies of the documents and intend to supplement the record with them to support my claims.

PAGE 4

## LOGISTIC ISSUES

As an incarcerated person I am at the mercy of others in most ways. For instance I did not get a copy of the Opinion and Order until May 3, 2018 and have no way to even attempt to get someone to pay Mobley to properly serve Breitenstein by May 15. I have everything sent from the Court to my post office box. Someone checks the box a couple times a month and mails me the contents. This is preferable to having to file a change of address with the Court whenever the Marshals move me. Unfortunately not only did this result in a delay of more than a week in my helper getting the mail, the staff here lost the first envelope containing it.

## CONCLUSION

Due to current criminal matters, the state of the record, and logistic issues, I need an additional 60 days to serve Breitenstein. So far this Court has been quite reasonable in accomodating my disability of incarceration. I ask that

PAGE 5

The Court please continue by giving me 60 more days.

Respectfully submitted this 3rd day of May 2018.

/s/

Cyrus Sullivan
Plaintiff, pro se

Exhibit 1

Tiffany A. Harris   OSB 02318
Attorney at Law
333 SW Taylor St., Suite 300
Portland, Oregon 97204
t. 503.782.4788   f. 503.217.5510
tiff@harrisdefense.com

Attorney for Cyrus Sullivan

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CYRUS ANDREW SULLIVAN.<br><br>Defendant. | 3:17-CR-00306-HZ<br><br>DECLARATION IN SUPPORT<br>OF DEFENSE MOTION FOR<br>REVIEW OF DETENTION |

I, Tiffany A. Harris, being first duly sworn upon oath, do depose and say:

1. I make this declaration in support of Mr. Sullivan's request for a review of detention or, in the alternative, for a transfer to Columbia County jail to (1) restore effective and regular contact between Mr. Sullivan and his defense team; (2) safeguard the privacy of his legal mail and the security of his legal papers; and (3) place him in close proximity to Oregon Health Sciences University, where he can receive needed medical treatment, as set forth below.

2. Sheridan Federal Detention Center is approximately 53 miles from downtown Portland. The average driving time is approximately an hour and a half each way. There are two methods for scheduling attorney-client visits at Sheridan: (1) arriving on site with proper credentials and requesting a visit on a walk-in basis, subject to the availability of attorney-client meeting rooms; or (2) emailing a request (ahead of time) to meet with a client and reserving an

Exhibit 1

attorney-client meeting room. Many attorneys opt for the second method so that attorney-client meetings can proceed as scheduled, without delays. Attorneys can also email requests to schedule un-monitored attorney-client phone calls. There is no known mechanism for scheduling attorney-client contact by telephone; it must be scheduled via email.

3.  Mr. Sullivan's defense team has not had face to face contact with Mr. Sullivan since November 29, 2017. Prior to that date, all of our requests to schedule attorney-client visits were answered and confirmed within three days, as was typical. For example, on November 2, 2017, I emailed a request to Sheridan to conduct an attorney-client meeting with Mr. Sullivan on November 7, 2017. Sheridan (through its scheduler) responded on the same day and confirmed the meeting.

4.  On December 12, 2017, Mr. Sullivan's defense team requested permission to meet with Mr. Sullivan on December 20, 2017. On December 15, 2017, Sheridan confirmed the meeting via email. On December 20, 2017, Mr. Sullivan's defense team (investigator Steve Wilson, co-counsel Matthew McHenry and I) arrived from Portland at Sheridan for the previously scheduled attorney-client meeting. We were not permitted to conduct the meeting or to speak with Mr. Sullivan by phone. Without offering any additional information, staff at the front desk repeated that Mr. Sullivan had been transferred to the SHU the night before.

5.  Two days later, on December 22, 2017 at 7:42 a.m., I sent an email to Sheridan requesting a 15-minute, unmonitored phone call with Mr. Sullivan to take place any time that day, at the convenience of correctional staff. I received no response.

6.  On January 2, 2018, I sent an email to Sheridan requesting an un-monitored attorney-client phone call for January 5, 2018 and an in-person attorney-client meeting for January 16, 2018.

7.  Sheridan never responded before January 5, the date of the proposed telephone contact. Instead, nine days later, on January 11, 2018, I received a response from Sheridan declining the request for a January 16, 2018 in-person meeting with Mr. Sullivan due to his

Exhibit 1

housing status in the SHU and proposing that we make the 90-minute trip to Sheridan two days later to conduct a video visit (with no ability to pass or review documents).

8.  In a series of emails that followed, the scheduler allowed Mr. Sullivan's defense team to conduct an unmonitored telephone call with Mr. Sullivan on January 18, 2018. A request for an in-person attorney-client visit to be conducted either on January 24, 2018 or January 26, 2018 (whichever was more convenient for corrections staff) remains un-answered.

9.  We have not been able to show or mail case-related documents or defense team work product to Mr. Sullivan for several weeks due to reports that staff members have (1) seized a letter from Mr. Sullivan's cell that was written by Mr. Sullivan to his attorneys; and (2) purposefully placed oil-soaked food (canned fish) on legal documents in Mr. Sullivan's possession, including a letter from counsel enclosing defense team work product.

10.  We have never received any explanation for the prolonged disruption to our attorney-client contact. We have never been told, in any other case, that an inmate's housing status in the SHU was a reason to deny him contact with his attorneys. Our inability to meet with or speak to our client or to rely on the attorney-client privilege to shield our mail has impeded our ability to discharge our duty under the Sixth Amendment and to prepare Mr. Sullivan's case for trial.

/// /// ///

# COLUMBIA COUNTY JAIL INMATE REQUEST FORM

Inmates Full Name: Cyrus Sullivan   DOB: 6/26/83   POD/Cell: ___

Date: 5/1/18   Booking Number (located on ID Card): 90740

| Law Library | Date Requested for use:<br>Law Library: _____   Law Computer: _____ |
|---|---|
| Visiting Sign-Up<br><br>Visitor Change List | 1. Visitor Name: _____   DOB: _____<br>   Children: _____   Relationship: _____<br>   Remove/ Add       Approved/ Denied<br><br>2. Visitor Name: _____   DOB: _____<br>   Children: _____   Relationship: _____<br>   Remove/ Add       Approved/ Denied<br><br>3. Visitor Name: _____   DOB: _____<br>   Children: _____   Relationship: _____<br>   Remove/ Add       Approved/ Denied<br><br>4. Visitor Name: _____   DOB: _____<br>   Children: _____   Relationship: _____<br>   Remove/ Add       Approved/ Denied<br><br>5. Visitor Name: _____   DOB: _____<br>   Children: _____   Relatioship: _____<br>   Remove/ Add       Approved/ Denied<br><br>******Need to read pages 16-17 of the Inmate Manual for Visiting Information****** |
| Other | Explain your issue: A large envelope was delivered here last week on 4/26 Thursday. It contains exhibits for a lawsuit. I still have not received it. It was mailed and tracked. |

*****Staff Use Only Below This Line*****

Date/ Time Recieved: 5-1-18  2300   Receiving Deputy: [signature] 49829

There is nothing in the refused mail box at this time. I can not find anything related to this

Date/ Time Answered: 5-1-18  2332   Answering Deputy: [signature] 49829

# COLUMBIA COUNTY JAIL INMATE REQUEST FORM

Inmates Full Name: _____ DOB: _____ POD/Cell: _____

Date: _____ Booking Number (located on ID Card): _____

| | |
|---|---|
| Law Library | Date Requested for use:<br>Law Library: _____ Law Computer: _____ |
| Visiting Sign-Up<br><br>Visitor Change List | 1. Visitor Name: _____ DOB: _____<br>   Children: _____ Relationship: _____<br>   Remove/ Add        Approved/ Denied<br><br>2. Visitor Name: _____ DOB: _____<br>   Children: _____ Relationship: _____<br>   Remove/ Add        Approved/ Denied<br><br>3. Visitor Name: _____ DOB: _____<br>   Children: _____ Relationship: _____<br>   Remove/ Add        Approved/ Denied<br><br>4. Visitor Name: _____ DOB: _____<br>   Children: _____ Relationship: _____<br>   Remove/ Add        Approved/ Denied<br><br>5. Visitor Name: _____ DOB: _____<br>   Children: _____ Relatioship: _____<br>   Remove/ Add        Approved/ Denied<br>******Need to read pages 16-17 of the Inmate Manual for Visiting Information****** |
| Other | Explain your issue: _____<br>_____<br>_____<br>_____<br>_____ |

*****Staff Use Only Below This Line*****

Date/ Time Recieved: _____ Receiving Deputy: _____

_____
_____
_____
_____
_____

Date/ Time Answered: _____ Answering Deputy: _____

# COLUMBIA COUNTY JAIL INMATE REQUEST FORM

Inmates Full Name: _____ DOB: _____ POD/Cell: _____
Date: _____ Booking Number (located on ID Card): _____

| Law Library | Date Requested for use:<br>Law Library: _____ Law Computer: _____ |
|---|---|
| Visiting Sign-Up<br><br>Visitor Change List | 1. Visitor Name: _____ DOB: _____<br>   Children: _____ Relationship: _____<br>   Remove/ Add        Approved/ Denied<br>2. Visitor Name: _____ DOB: _____<br>   Children: _____ Relationship: _____<br>   Remove/ Add        Approved/ Denied<br>3. Visitor Name: _____ DOB: _____<br>   Children: _____ Relationship: _____<br>   Remove/ Add        Approved/ Denied<br>4. Visitor Name: _____ DOB: _____<br>   Children: _____ Relationship: _____<br>   Remove/ Add        Approved/ Denied<br>5. Visitor Name: _____ DOB: _____<br>   Children: _____ Relatioship: _____<br>   Remove/ Add        Approved/ Denied<br>******Need to read pages 16-17 of the Inmate Manual for Visiting Information****** |
| Other | Explain your issue: _____<br>_____<br>_____<br>_____<br>_____ |

*****Staff Use Only Below This Line*****

Date/ Time Recieved: _____ Receiving Deputy: _____
_____
_____
_____
_____
_____
_____

Date/ Time Answered: _____ Answering Deputy: _____